This is an appeal from a partial summary judgment in favor of the defendant insurer on a claim alleging bad faith refusal to pay insurance benefits. The issue presented is whether the defendant insurer had a "lawful basis" for refusing to pay the claim for uninsured motorist benefits.
John Weaver sued Allstate Insurance Company for benefits he claimed were due him under the uninsured motorist provisions of his automobile liability insurance policy. In an amendment to the complaint, Weaver's wife, Ginger, was also named as a plaintiff, claiming loss of consortium. Because Ginger Weaver's claim is derivative of her husband's claim, and because of our disposition of the husband's claim, we need not address the summary judgment as it relates to her claim.[1] Therefore, we will refer only to John Weaver as the plaintiff in this case.
Shortly after midnight on the morning of May 7, 1988, Weaver was traveling south on Interstate Highway 65. He was riding a motor scooter. In support of his claim, he asserts that while traveling along the highway, his scooter was hit from behind by a "tractor-trailer" truck and that he was caused to incur numerous injuries and medical expenses. He further claims that the truck driver did not stop and that he was unable to ascertain the identity of the truck's owner, or the truck's license number. Although Weaver's scooter was hit by a Mr. Vandiver, Weaver maintains that this occurred only after the tractor-trailer truck had hit him from behind and knocked him from the scooter. In essence, Weaver alleges that he was involved in a "hit and run" accident and that he was the only witness to the accident.
The accident report, made at the scene of the accident by the investigating officer, indicates that the automobile, driven by Mr. Vandiver, struck Weaver's motor scooter from behind, and that Mr. Vandiver "stated that he never saw [the motor scooter] until it was struck." Although the investigating officer reported that Weaver claims he was run over by a tractor-trailer truck, the officer also indicated in the report that "[t]here was no evidence of this and [Mr. Vandiver] stated he did not see a truck."
Weaver's insurer, Allstate Insurance Company (hereinafter referred to as "Allstate") was informed on May 7, 1988, of the nature of Weaver's accident and resulting injuries, and on May 12, 1988, Weaver's uninsured motorist claim was assigned to an Allstate claims representative who immediately began investigating Weaver's claim. The Allstate representative discussed with Weaver and his wife the circumstances surrounding the accident, reviewed Weaver's signed statement, which *Page 773 
set out in detail how he believed the accident occurred, and reviewed the investigating officer's report. The representative also discussed the accident with the investigating officer and with Tonya Williams (who claimed to be an eye-witness to Mr. Vandiver's collision with the motor scooter). Allstate's representative also reviewed a recorded statement made by Mr. Vandiver and discussed the accident with Mr. Vandiver's claims adjuster.
From this investigation, Allstate's representative determined that there existed a legitimate, arguable, or debatable basis to believe that Weaver had not been hit from behind by an unidentified tractor-trailer truck but that the accident had occurred otherwise. The accident report indicated that no truck was involved and that the motor scooter was impaled upright in the grille of Mr. Vandiver's automobile. The investigating officer told the Allstate representative that, although a truck did come by shortly after the accident, he believed that Mr. Vandiver's broken windshield was caused by the impact with Mr. Weaver and that a tractor-trailer truck could not possibly have run over Weaver. Tonya Williams stated that she heard Mr. Vandiver's collision with the motor scooter, but that she did not see the motor scooter until after Mr. Vandiver had collided with it. Finally, Mr. Vandiver told the Allstate representative that he saw no one on the motor scooter when he collided with it.
Allstate's representative decided to deny Weaver's uninsured motorist claim on June 14, 1988. On June 16, 1988, Weaver made a written demand for uninsured motorist benefits. Allstate responded in a letter stating: "[B]ased on our investigation of the facts surrounding this accident, we do not feel there is sufficient evidence to support your claim for damages. Therefore, we are unable to make any voluntary payment under the uninsured motorist provisions of your policy."
Weaver filed suit against Allstate on January 12, 1989. On January 25, 1990, Allstate filed a motion for partial summary judgment as to the claim based on an alleged bad faith refusal to pay, which the trial court granted and certified as final pursuant to the provisions of Rule 54(b) Ala.R.Civ.P. Weaver appeals from that ruling.
The question we must decide is whether the trial court erred in entering Allstate's partial summary judgment as to the bad faith claim. This Court very recently defined "bad faith" as the "intentional failure by an insurer to perform the duty of good faith and fair dealing implied by law." Koch v. StateFarm Fire Casualty Co., 565 So.2d 226 (Ala. 1990). InChavers v. National Security Fire Casualty Co.,405 So.2d 1, 7 (Ala. 1981), this Court established a two-tiered test for determining whether an insurer is guilty of bad faith: An insurer is guilty of bad faith (1) if it fails to pay when it has no lawful basis for refusing the claim and has actual knowledge of that fact or (2) when it refuses to pay after it has intentionally failed to determine whether there is any lawful basis for its refusal to pay.
With regard to the first tier of the test, we note that the term "no lawful basis" was defined in Gulf Atlantic LifeIns. Co. v. Barnes, 405 So.2d 916, 924 (Ala. 1981):
 " 'No lawful basis,' as expressed in [Chavers], means that the insurer lacks a legitimate or arguable reason for failing to pay the claim. . . . That is, when the claim is not fairly debatable, refusal to pay will be bad faith and, under appropriate facts, give rise to an action for tortious refusal to honor the claim. . . . When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. . . . Bad faith, then, is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of a known duty. . . ."
The second tier is a derivative of the first. In finding whether there was an intentional failure to determine if there exists a lawful basis for refusing the claim, the relevant question before the trial court becomes whether the insurer properly investigated the claim. "Of course, if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held *Page 774 
liable in an action based on the tort of bad faith."Barnes, supra, at 924.
In this case, the trial court determined, as a matter of law, that there existed no genuine issue of material fact as to Allstate's assertion that it possessed a "lawful basis" for refusing Weaver's claim for uninsured motorist benefits. We must decide whether the trial court erred in reaching this conclusion.
Summary judgment on a claim is proper if, as to that claim, there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(e), Ala.R.Civ.P. This rule applies to individual claims in a multi-claim action. Donald v. City Nat'l. Bank ofDothan, 295 Ala. 320, 329 So.2d 92 (1976). In reviewing a summary judgment, we employ the same standard used by the trial court in determining whether the evidence before the court made out a genuine issue of material fact. Southern Guar. Ins.Co. v. First Alabama Bank, 540 So.2d 732 (Ala. 1989).
On motion for summary judgment, the moving party bears the burden of making a prima facie showing, on the basis of affidavits and other matters enumerated in Rule 56, Ala.R.Civ.P., that there is no genuine issue of material fact. Once the movant makes this prima facie showing, the burden shifts to the nonmovant to produce substantial
evidence in support of his position. "[T]he burden is now greater than in the past, because the nonmovant must show "substantial evidence" — rather that simply a scintilla — in support of his position." Grider v. Grider,555 So.2d 104, 105 (Ala. 1989); Bass v. SouthTrustBank, 538 So.2d 794, 797-98 (Ala. 1989).
In this case, the trial court found that Allstate had met its burden by making a prima facie showing that there existed no genuine issue of material fact as to whether Allstate had a legitimate, arguable, or debatable basis for denying Weaver's claim for uninsured motorist benefits and held that as to the bad faith claim it was entitled to a judgment as a matter of law. We agree that Allstate made a prima facie showing, consisting of the affidavit and records of its claim representative, that it had a legitimate, arguable, or debatable reason for denying Weaver's insurance claim. The fact that there was conflicting evidence in statements made by Mr. and Mrs. Weaver, the investigating officer in the accident report, Mr. Vandiver, Mr. Vandiver's insurer, and eyewitness Tonya Williams, while sufficient to show a triable issue on the liability vel non of Allstate to pay uninsured motorist benefits under the provisions of the policy, defeats Weaver's attempt to make a triable issue on the question of Allstate's bad faith refusal to pay those benefits.
After Allstate made its prima facie showing, the burden shifted to Weaver to produce substantial evidence, if he could, in support of his claim that Allstate acted in bad faith in refusing to pay uninsured motorist benefits. Weaver showed that he possessed a valid contract for uninsured motorist benefits with Allstate. However, we agree with the trial court that Weaver presented no "substantial evidence" tending to show that Allstate intentionally failed to determine whether there was a legitimate, arguable, or debatable reason for refusing to pay the uninsured motorist claim. We further agree with the trial court's conclusion that Weaver failed to present substantial evidence that Allstate refused to pay without any reasonable basis for its refusal or that Allstate had no legal or factual defense to the claim. "If any one reason for denial of coverage is at least 'arguable,' this court need not look any further," and a claim for bad faith refusal to pay will not lie.McLaughlin v. Alabama Farm Bureau Mutual Casualty InsuranceCo., 437 So.2d 86, 91 (Ala. 1983).
With regard to Weaver's allegation that Allstate intentionally failed to adequately investigate the accident, we agree with the trial court that no triable issue was presented on this issue, because we hold that Allstate's investigation established a legitimate or arguable reason for refusing to pay Weaver's claim, which is all that is required. State FarmFire Casualty Co. v. Balmer, 891 F.2d 874 (11th Cir.), cert. denied, ___ U.S. ___, 111 S.Ct. 263, *Page 775 112 L.Ed.2d 220 (1990). In Balmer, a fire damaged an insured dwelling; the insurer, State Farm, denied coverage and brought a declaratory judgment action alleging that it was not obligated to pay the loss. The insureds, the Balmers, counterclaimed for damages for a bad faith failure to pay, alleging that State Farm's investigation was inadequate. The trial court applied Alabama law, specifically citingChavers, supra; and Barnes, supra. The trial court found that State Farm had failed to use appropriate forms in recording the loss and had failed to sift through the debris to verify the listing of contents the Balmers said were destroyed in the fire, and there was also evidence that State Farm had failed to follow its own rules for properly investigating the fire. However, the trial court found that State Farm had an arguable basis for denying the claim at the time of the denial. The Eleventh Circuit Court of Appeals agreed stating:
 "Alabama law is clear . . . that regardless of the imperfections of State Farm's investigation, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim."
Balmer, at 877 (Emphasis added).
This Court stated in Bowers v. State Farm Mutual Auto.Insurance Co., 460 So.2d 1288, 1290 (Ala. 1984), that "where a legitimate dispute exists as to liability, . . . a tort action for bad faith refusal to pay a contractual claim will not lie."
In National Security Fire Casualty Co. v. Bowen,417 So.2d 179, 183 (Ala. 1982), this Court recognized that the "[insured] must go beyond a mere showing of nonpayment . . . [and] must show that the insurance company had no legal or factual defense to the insurance claim."
In the present case, Weaver's primary contention is that Allstate failed to establish that the accident did not occur as he maintains. We, however, agree with the trial court that Allstate did not have a burden to show that the accident did not happen as Weaver claimed, but only to show that it had a legitimate or arguable basis for the denial of the claim. We conclude that the trial court did not err in holding that Allstate met its burden by making its prima facie showing and that Weaver failed to rebut that showing by substantial evidence indicating (1) that Allstate had no lawful basis for denying his claim or (2) that Allstate intentionally failed to determine if there was a lawful basis for denying his claim. We, therefore, agree with the trial court that Allstate was entitled to a partial summary judgment on Weaver's claim of bad faith.
Weaver may be able to prove, in the contract action still pending before the trial court, that the facts occurred as he says they did. However, even considering Weaver's version of the facts, we find nothing in Allstate's denial of his claim or in its investigation of the claim that would support a bad faith claim.
For the foregoing reasons, we affirm the partial judgment of the trial court.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] But as to loss of consortium claim in an uninsured motorist coverage context, see Weekley v. State Farm Mut.Auto Ins. Co., 537 So.2d 477 (Ala. 1989).