The defendant, Lewis K. Davis, appeals from a partial summary judgment entered in favor of the plaintiffs, Cotton States Mutual Insurance Company ("Cotton States") and Shield Insurance Company ("Shield"), on his counterclaim alleging the plaintiffs' bad faith refusal to provide uninsured motorist benefits. We affirm.
The parties entered into the following stipulation of facts, which we set out as a partial statement of the facts of this controversy:
"1. Lewis K. Davis is the father of Kevin Davis.
 "2. On July 20, 1990, Lewis K. Davis was the named insured in Cotton States Mutual Insurance Company (hereinafter 'Cotton States') policy number APA 1297752 (hereinafter referred to as 'the Cotton States Policy'), a true and correct copy of said Cotton States policy being attached hereto as Exhibit A. He was also, on July 20, 1990, the named insured in Shield Insurance Company (hereinafter 'Shield') policy number SPA 1157495 (hereinafter referred to as 'the Shield policy'), a true and correct copy of said Shield Insurance Company policy being attached hereto as Exhibit B.
 "3. On July 20, 1990, both the Cotton States policy and the Shield policy were in full force and effect.
 "4. Kevin Davis is the minor son of Lewis K. Davis, and on July 20, 1990, Kevin Davis was an 'insured' under both the Cotton States policy and the Shield policy. On July 20, 1990, Kevin Davis was a 'family member' of Lewis K. Davis's family.
 "5. Kevin Davis was born on January 13, 1978. Therefore, on July 20, 1990, he was 12 years old.
 "6. On July 20, 1990, at approximately 3:45 p.m. on a public road in Lee County, Alabama, more specifically described as Jasper McConnell Road, Kevin Davis sustained 'bodily injury' caused by an accident, when the 1987 Yamaha 79 CC motorcycle on which he was riding at the time, and which was driven by C.J. Hawkins (also a minor at the time), and which was owned by C.J. Hawkins's father (W.C. Hawkins) . . . collided with a car which was then and there driven by James Derle Patterson.[1] Said Yamaha motorcycle was powered by a gasoline motor.
 "7. As a direct and proximate result of said July 20, 1990, accident, Kevin Davis was seriously injured and his father, Lewis K. Davis, incurred medical *Page 356 
expenses for his son Kevin Davis, and also lost the services of his minor son.
 "8. Lewis K. Davis stipulates that, as of July 20, 1990, there were no bodily injury liability bonds or policies applicable to: (a) said Yamaha motorcycle; or (b) said automobile which was operated by the said James Derle Patterson; or (c) said accident which occurred on July 20, 1990. Cotton States and Shield stipulate that as of this date, neither of them is aware of the existence of any such bodily injury liability bonds or policies.
 "9. As of July 20, 1990, neither said Yamaha motorcycle nor said car being driven by James Derle Patterson was (a) owned by or furnished or available for the regular use of Lewis K. Davis or any 'family member' of the Lewis K. Davis family; (b) owned or operated by a self-insured under any applicable motor vehicle law; (c) owned by any governmental unit or agency; (d) operated on rails or crawler treads; (e) located for use as a residence or premises.
 "10. Both the Cotton States policy and the Shield policy require that in order for there to be uninsured motorist coverage, the insured must be involved in an accident involving an 'uninsured motor vehicle.'
 "11. Neither Lewis K. Davis nor Kevin Davis (nor anyone acting as his representative or on his behalf) has settled either of their 'bodily injury' claims arising out of said July 20, 1990, accident. Other than Lewis K. Davis's Counterclaim and First Amended Counterclaim in this case, there has not been any . . . action filed against any potential defendants by Lewis K. Davis and/or his son, Kevin Davis, as a result of this accident as of this time.
 "12. A true and correct copy of the certificate of origin for said Yamaha motorcycle is hereby attached as Exhibit C to this stipulation. That there was a label on the rear fender of the Yamaha motorcycle which states, 'warning: this vehicle was not manufactured for use on public streets, roads or highways. Such use is prohibited by law.' Further, a page in the owner's manual is hereto attached as Exhibit D, which is a true and correct copy of the owner's manual for the above-described Yamaha motorcycle.
 "13. Lewis K. Davis, individually, and on behalf of his minor son, Kevin Davis, timely and properly placed Cotton States and Shield on notice of said July 20, 1990, accident; and timely and properly made claim with Cotton States and Shield to pay the uninsured motorist benefits available under the Cotton States policy and the Shield policy, in connection with said bodily injury sustained by Kevin Davis and in connection with the July 20, 1990, accident. Prior to Lewis K. Davis's filing his First Amended Counterclaim in this case, both Cotton States and Shield refused to pay Lewis K. Davis under the uninsured motorist coverage provisions of said two policies, and denied that they owed any money for uninsured motorist benefits. The reasons for Cotton States' and Shield's said refusal and denial are as follows:
 "(a) Cotton States and Shield took, and still take, the position that James Derle Patterson was not guilty of any conduct which proximately resulted in any injury or damage to Lewis K. Davis or his son, Kevin Davis, as required under the uninsured motorist provisions of said two insurance policies; and
 "(b) Cotton States and Shield took, and still take, the position that said Yamaha motorcycle was not an uninsured motor vehicle as defined under § 32-7-2 and § 32-7-23, Code of Alabama, and that said motorcycle was not an uninsured motor vehicle under the terms of the uninsured motorist provisions of said two insurance policies.
 "14. Cotton States and Shield filed their complaint for declaratory judgment in this case on October 3, 1990."
In their complaint for a declaratory judgment, Cotton States and Shield asked the trial court to determine that they had no obligation to Davis under the uninsured motorist provisions of the two policies because they alleged that, under the policies, "the vehicle driven by C.J. Hawkins does *Page 357 
not constitute an 'insured vehicle.' " The second amended complaint of Cotton States and Shield asserts their specific contention that the vehicle driven by C.J. Hawkins was a "dirt bike or trail bike," prohibited from being driven on a public road. They further asserted that the vehicle was not an uninsured motor vehicle under Ala. Code 1975, § 32-7-2 and §32-7-23.
The parties each moved for a summary judgment with respect to the declaratory judgment aspect of the case. The trial court's order ruling on the parties' motions stated the following:
 "The defendant, Lewis K. Davis, asserts that he is entitled to uninsured motorist coverage for an injury sustained by his minor son who was riding a 'trail bike' which collided with an uninsured automobile.
 "It is the position of plaintiffs that a 'trail bike' is not a 'motor vehicle' within the meaning of the uninsured motorist statutes of the State of Alabama.
 "The attorney for defendant argues that the terms of the policy which provided uninsured motorist coverage are broader than that provided by statute and that a 'trail bike' being operated on a public highway is not excluded from coverage under the terms of that policy.
"The applicable policy provisions state:
 " 'However "uninsured motor vehicle" does not include any vehicle or equipment:
" '. . . .
 " '5. Designed mainly for use off public roads while not on public roads.' [Emphasis added.]
 "A reasonable argument can be made that this policy language can be interpreted to mean coverage is available for trail bikes while being operated on public roads. In any event, there is enough ambiguity in the language of the policy to leave some doubt.
 "Appellate opinions of this state have consistently held that ambiguous provisions of an insurance policy will be construed most strongly against the insurer and in favor of the insured.
 "Accordingly, the motion for summary judgment filed by plaintiffs is denied.
 "The motion for summary judgment filed by defendant is construed by the Court as a motion for partial summary judgment to determine that there is uninsured motorist coverage under the facts of this case. Said motion for partial summary judgment by defendant is granted."
Cotton States and Shield did not appeal from that judgment of the trial court. Cotton States and Shield then moved for a summary judgment on Davis's counterclaim alleging that Cotton States and Shield had refused in bad faith to provide uninsured motorist benefits. The trial court entered a summary judgment in favor of Cotton States and Shield on Davis's bad faith claim after having noted, in reference to its ruling on the parties' initial motions for summary judgment, "that there was a debatable issue as to a matter of law for failure to pay this claim initially." Davis appeals from the summary judgment in favor of Cotton States and Shield on Davis's bad faith counterclaim.
Davis contends that there was no lawful basis for Cotton States and Shield to refuse to provide uninsured motorist benefits. Davis asserts that the absence of a lawful basis for refusal is established by the trial court's summary judgment in favor of Davis based on its holding that Davis was entitled to uninsured motorist benefits. Davis asserts that he presented substantial evidence that Cotton States and Shield knew that there was no lawful basis for refusal of the uninsured motorist benefits or that Cotton States and Shield intentionally failed to determine whether a lawful basis existed.
Cotton States and Shield contend that the trial court's conclusion, on its ruling on the parties' first motions for summary judgment, that "there was a debatable issue" with regard to the obligation of Cotton States and Shield to provide uninsured motorist benefits precludes the existence of a genuine issue of material fact with regard *Page 358 
to Davis's bad faith claim.[2]
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering a summary judgment. The rule requires the trial court, in order to enter a summary judgment, to determine (1) that there is no genuine issue of material fact, and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed by this Court:
 " 'The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533
(Ala. 1980).' "
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quotingSchoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala. 1985)).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990).
Because this action was not pending on June 11, 1987, Ala. Code 1975, § 12-21-12, mandates that Davis meet his burden by "substantial evidence." Bass v. South-Trust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). More simply stated, "[a]n issue is genuine if reasonable persons could disagree." Schwarzer, Summary Judgment Under theFederal Rules: Defining Genuine Issues of Material Fact,99 F.R.D. 465, 481 (1982).
In National Sec. Fire Casualty Co. v. Bowen, 417 So.2d 179
(Ala. 1982), this Court stated the following principles applicable to a "bad faith refusal" case:
 "An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. Chavers v. National Security Fire Ins. Co., 405 So.2d 1 (Ala. 1981). No lawful basis 'means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916 (Ala. 1981). When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether *Page 359 
the debate concerns a matter of fact or law. Ibid.
 "Under those authorities the plaintiff in a 'bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
 "The 'debatable reason' under (c) above means an arguable reason, one that is open to dispute or question."
Id. at 183. In LeFevre v. Westberry, 590 So.2d 154 (Ala. 1991), we noted that "the insured must eliminate any arguable reason propounded by the insurer for refusing to pay the claim." Id.
at 159 (quoting Burns v. Motors Ins. Corp., 530 So.2d 824, 827
(Ala.Civ.App. 1987)).
Since recognizing the tort of bad faith in Alabama, this Court has held that proof of mere negligence or mistake is not sufficient to support a claim of bad faith; there must be a refusal to pay, coupled with a conscious intent to injure. SeeKing v. National Found. Life Ins. Co., 541 So.2d 502 (Ala. 1989); Pierce v. Combined Ins. Co. of America, 531 So.2d 654
(Ala. 1988); Coleman v. Gulf Life Ins. Co., 514 So.2d 944 (Ala. 1987); Blue Cross Blue Shield of Alabama v. Granger,461 So.2d 1320 (Ala. 1984); Gulf Atl. Life Ins. Co. v. Barnes,405 So.2d 916 (Ala. 1981). Applying the principles stated above to the circumstances of this case, we hold that Davis failed to meet his burden of presenting substantial evidence of an absence of any lawful basis for the refusal of Cotton States and Shield to provide him with uninsured motorist benefits and the insurers' knowledge of that fact or the insurers' intentional failure to determine whether a lawful basis existed for their refusal. LeFevre, 590 So.2d at 159.
Crucial to the insurers' showing that they did not act in bad faith is their employment of a lawyer in private practice to research the coverage of the motor vehicle. The insurers contend that they were uncertain whether the vehicle at issue in this case fell within the uninsured motorist provisions of their policies, and the advice of their lawyer confirmed that uncertainty. Their lawyer advised them that the issue of coverage under the circumstances of this case was an issue of first impression in this state. In other circumstances reliance on the advice of informed counsel has often been sufficient in itself to establish good faith or to rebut a claim of bad faith. Lynch v. Green Tree Acceptance, Inc., 575 So.2d 1068
(Ala. 1991); Hanson v. Couch, 360 So.2d 942 (Ala. 1978); andUphaus v. Charter Hospital of Mobile, 582 So.2d 1140
(Ala.Civ.App. 1991). There is no indication in the record that the insurers were not entitled to rely on their lawyer's advice. It is a reasonable inference from these facts that the insurers' complaint for a declaratory judgment was filed with the aim of resolving the doubt raised by their lawyer's advice.
After a thorough review of the record, we find no evidence that Cotton States and Shield denied Davis's claim for uninsured motorist benefits in bad faith with an intent that he be injured by the denial. The record reflects an attempt by Cotton States and Shield to legitimately determine, in good faith, whether the kind of vehicle at issue was covered by the uninsured motorist provisions of the policies. That effort included employment of legal counsel to *Page 360 
determine the extent of coverage and it indicates reliance on the lawyer's advice. Under these facts, Cotton States and Shield have demonstrated an arguable reason for denying uninsured motorist benefits to Davis.
Davis's effort to controvert the insurers' showing of a reason for the denial is essentially an argument in hindsight — that the vehicle upon which Davis's son was riding may fit within the uninsured motorist provisions of the policies at issue. In addressing the alleged bad faith of an insurer, our focus is on the events and circumstances surrounding the investigation and ultimate denial of the claim rather than on subsequent determinations with respect to coverage, whether erroneous or not, that come after the initiation of litigation. The trial court did not err in recognizing that an arguable question existed as to whether the vehicle at issue was covered by the policies. The existence of such an arguable question, the creation of which is not motivated by bad faith, precludes the imposition of liability on an insurance company for bad faith refusal to pay an insurance claim. "If any one of the reasons for denial of coverage is at least 'arguable,' this Court need not look any further." McLaughlin v. Alabama FarmBureau Mut. Casualty Ins. Co., 437 So.2d 86, 91 (Ala. 1983). See also King v. National Found. Life Ins. Co., 541 So.2d 502,505 (Ala. 1989).
Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] Although James Derle Patterson was originally named as a defendant in the plaintiffs' complaint for a declaratory judgment, he was subsequently dismissed from the action.
[2] In Safeco Ins. Co. of America v. Sims, 435 So.2d 1219, 1223
(Ala. 1983), this Court explained:
 "We are of the opinion that the finding of a justiciable controversy is not the determining factor of whether there was or was not bad faith on the part of an insurance company to pay a claim. The standard for testing a bad faith claim is not found in either the adjudication of a justiciable controversy or the judgment on the merits of the contract claim." In his special concurrence, Justice Jones stated:
 "The standard for testing a bad faith claim is to be found neither in the adjudication of a justiciable controversy, standing alone, nor in the judgment on the merits of the contract claim. This is not to say, of course, that either of these holdings is irrelevant to the bad faith issue. To be sure, the filing of a declaratory judgment action, under appropriate circumstances, may evidence a good faith attempt to seek a prompt resolution of a disputed claim. If, on the other hand, the refusal to pay is without legal excuse, the mere filing of a declaratory judgment action, followed by a finding of justiciable controversy, may enhance rather than diminish the degree of bad faith."
Id. at 1224 (Jones, J., concurring specially).