ALABAMA GAS CORPORATION,
Plaintiff,

v.

TRAVELERS CASUALTY AND
SURETY COMPANY, et
al., Defendants.

Case No. CV–10–J–1840–S.

United States District Court,
N.D. Alabama,
Southern Division.

Signed June 25, 2013.

Fred R. Deleon, Jr., Deleon Law Firm, Haley Andrews Cox, Michael L. Bell, Lightfoot Franklin & White LLC, Rebecca W. Pritchett, Lawler Lansden, Birmingham, AL, W. Scott Laseter, Kazmarek Geiger & Laseter, LLP, Atlanta, GA, for Plaintiff.

Andrew J. Sinor, Jr., Hand Arendall LLC, Birmingham, AL, Frank Winston, Jr., Steptoe & Johnson, LLP, Washington, DC, John S. Johnson, Hand Arendall LLC, Birmingham, AL, Paul E. Janaskie, Steptoe & Johnson LLP, Ruth S. Kochenderfer, Steptoe & Johnson LLC, Washington, DC, for Defendants.

### MEMORANDUM OPINION
### and ORDER

INGE PRYTZ JOHNSON, Senior District Judge.

Pending before the court are crossmotions for summary judgment filed by the

parties. Each of the claims in this case arises out of defendants' refusal to defend or indemnify plaintiff on a claim for which the plaintiff asserts the insurance policies in question should provide coverage.[1]

As previously set forth by the court, the facts relevant to this case began before 1900. The lengthy, relevant facts are not in dispute, and the court summarizes the same here. The Huntsville Gas Light Company incorporated in 1856 and manufactured gas. That company and its operations moved to the site relevant to this action prior to 1886, under the name Hunstville Gas Light and Coke Company ("HGLC"). *See e.g.*, doc. 130–3 (Exhibit B) at 3. HGLC, under several different names, provided gas produced from various sources to customers until 1946. Spills, leaks and emissions released substances classified as hazardous into the environment.[2] In 1946 the Huntsville facility was converted to a propane air system, and then plaintiff (a corporate successor to the Huntsville company) sold the plant and distribution system to the City of Huntsville in 1949. Depo. of Dennis Unites (doc. 130–2), at 37–38. Although a natural gas pipeline was installed in March 1952, ending the need for the propane system, the City of Huntsville used the site for various utility service purposes until 1967. In 1967 ownership of the site was transferred for purposes of constructing public housing. The plant was demolished, and the Searcy Homes public housing project was completed in 1971, with title to the land passing to the Huntsville Housing Authority at that time. Doc. 133–1 at 7, ¶ 9.h.

From 1947 until 1984, plaintiff alleges it was insured under liability policies issued by various subsidiaries of defendant Travelers Casualty and Surety Company.[3] In 2008 plaintiff received an "information request" letter from the EPA and a pollution report regarding this site. *See e.g.*, doc. 130–20 (Exhibit N) at 3. Plaintiff forwarded the same to the defendants along with a demand for coverage in October 2008. *Id.*, at 1. In November 2008 defendants notified plaintiff that there was no "formal claim" and thus there could be no coverage until "such a claim or lawsuit is received." Doc. 130–22 (Exhibit P). In June 2009 the plaintiff received a formal PRP letter, which it again forwarded to the defendant. Doc. 130–21 (Exhibit O). On February 3, 2010, the defendants informed plaintiff that there was no "suit" and hence there was no defense obligation on its part. *See* Memorandum Opinion of December 7, 2010, at 8–9; *see also* doc. 130–23 (Exhibit Q). The plaintiff's claims include Declaration of Duty to Defend; Reimbursement for Defense Costs; Bad Faith; Declaration of Duty to Indemnify; and Waiver and Estoppel. In sum, this case concerns whether defendants' denial of insurance coverage to plaintiff was reasonable, and if

---

1. The court shall address the question of coverage by separate Memorandum Opinion and

2. More specifically, in both the coal gasification process and the carbureted gas manufacture process, tars and oils are generated which contain polynuclear aromatic hydrocarbons ("PAHs"), which are carcinogenic. *See e.g.*, doc. 133–1 at 8; Unites depo. (doc. 130–2) at 38.

3. Defendants dispute that Travelers insured plaintiff continuously from 1947 until 1984

because portions of policies issued between 1947 and 1967 are missing. Defendants' brief in opposition (doc. 163) at 2. No evidence of any policies issued prior to 1967 has been submitted to the court. By Opinion and Order dated February 2, 2011, this court has previously ruled that the only proof of an insurance contract between the parties is for July 10, 1967, to July 10, 1983. See Memorandum Opinion and Order of February 2, 2011 (doc. 66), at 2–3.

not, whether such denial was in bad faith. The parties dispute whether defendant Travelers knew or should have known that its position in this case, that being defendants' assertion that the Potentially Responsible Party ("PRP") Letter the plaintiff received from the EPA was not a "suit" triggering the duty to defend, was not fairly debatable. Plaintiff thus asserts that the court should find that defendant Travelers acted in bad faith as a matter of law [4] (doc. 126 at 16).

Because the court found the issue of whether a PRP Letter was a suit for purposes of triggering the duty to defend was dispositive of the bad faith claim, and because the parties agreed that "no Alabama state court or any federal court applying Alabama law ha[s] ever addressed whether a PRP letter from the EPA satisfies the "suit" requirement under a liability policy," [5] the court certified this question to the Alabama Supreme Court. *See Travelers Casualty and Surety Company v. Alabama Gas Corp.*, 117 So.3d 695 (Ala.2012). Specifically, this court asked:

> Under Alabama law, is a 'Potentially Responsible Party' ('PRP') letter from the Environmental Protection Agency ('EPA'), in accordance with the Comprehensive Environmental Response Compensation and Liability Act ('CERCLA') provisions, sufficient to satisfy the 'suit' requirement under a liability policy of insurance?"

*Id.* at 696. The Supreme Court of Alabama responded by stating "[w]e answer this question in the affirmative." *Id.* With this background, the court considers the pending motions.

**A. Plaintiff's renewed motion for partial summary judgment on bad faith** (doc. 125); Evidentiary submissions in support of said motion (docs. 126, 136–139, 169–171); Defendants' opposition to plaintiff's motion (doc. 162); Plaintiff's reply to defendants' opposition (doc. 181); and Evidence in support of plaintiff's reply to defendant's opposition (docs. 177–178)

**B. Defendants' motion for summary judgment seeking dismissal of plaintiff's claim for bad faith** (Count III) (doc. 127); Defendants' brief and evidence in support of its own motion (doc. 129); Plaintiff's response to defendants' motion for summary judgment (doc. 164); and Defendants' reply in support of defendants' motion for summary judgment (doc. 179)

Pursuant to the parties' request, the court also allowed each party to submit a short additional brief concerning the effect of the Supreme Court of Alabama's December 28, 2012, opinion on the pending motions. The court received additional pleadings addressing the same (docs. 210 and 211). According to the plaintiff, the December 28, 2012, decision "should have no material effect" on the court's consideration of the pending motions (doc. 210). The defendants assert the Alabama Supreme Court's decision confirmed that whether a PRP letter constituted a suit was "fairly debatable" under Alabama law

---

**4.** Under CERCLA, a PRP shall be liable for: "(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and (D) the costs of any health assessment or health effects study carried out under section 9604(i)." 42 U.S.C. § 9607(a)(4).

**5.** Defendants' brief in opposition to plaintiff's motion for summary judgment (doc. 162, at 12), citing to plaintiff's brief (doc. 22) at 1, 17, 19.

at the time defendants made their coverage determination, and thus requiring that the plaintiff's claim for bad faith must be dismissed as a matter of law (doc. 211).

Defendants' motion and supporting evidence seeks judgment in their favor and against the plaintiff on the bad faith claim by alleging that every action taken by defendant Travelers in investigating the plaintiff's claim was reasonable, based on a full investigation, and not done with a "dishonest purpose, some motive of self-interest, or ill will." (doc. 127 at 2).

In certifying the question to the Alabama Supreme Court, this court held:

> The court finds the underlying issue for trial in this case is whether the defendants acted reasonably in denying coverage to the plaintiff. The defendants rely on the fact that there has been no "suit" filed against the plaintiff. The plaintiffs counter that 44 of the 50 states have found a PRP letter from the EPA sufficient to trigger coverage under similar facts.
>
> Under Alabama law, when doubt exists as to whether coverage exists under an insurance contract, language used by the insurer must be construed for the benefit of the insured. *Associated Scrap Metal, Inc. v. Royal Globe Insurance Co.*, 927 F.Supp. 432, 437 (S.D.Ala.1995) (finding insurer had duty to provide coverage in case where scrap metal company was notified by EPA of potential liability as PRP). See also *State Farm Mutual Auto. Insurance. Co. v. Lewis*, 514 So.2d 863, 865 (Ala.1987) (stating exceptions to insurance coverage are to be interpreted as narrowly as possible in order to provide maximum coverage for the insured). Applying this logic to similar actions in other states and other federal circuits, courts have held that CERCLA administrative proceedings initiated by PRP letters constitute

"suits." See e.g., *Wells Cargo, Inc. v. Transport Insurance Co.*, 2011 WL 5080143 (D.Idaho 2011) (stating "[i]f the threat is clear then coverage should be provided."); *Ash Grove Cement Co. v. Liberty Mut. Ins., Co.*, 2011 WL 2470109, *3 (D.Or.2011) ("the 104(e) request for information the EPA sent to Ash Grove, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9604(e), constituted a "suit" under the terms of the insurance policies ... thus triggering the insurers' duty to defend....")

The court has also considered the aspect of law which states that whether the government performs the cleanup itself or compels a PRP to do it, the government is authorized to recover "all costs of removal or remedial action" associated with the cleanup from such PRPs, either through a civil action under § 107(a)(4)(A), or through an administrative settlement under § 122(g) or § 122(h). 42 U.S.C. §§ 9607(a)(4)(A), 9622(g) & (h); *Solutia, Inc. v. McWane, Inc.*, 726 F.Supp.2d 1316 (N.D.Ala.2010). Under CERCLA's strict liability regime, a party that falls within any of the four PRP categories of § 107(a) may be held jointly and severally liable by the government for the entire cost of a cleanup, even if the party is "innocent" in the sense that it did not contribute to the pollution at the site. *See* § 9607(a), *Canadyne–Georgia Corp. v. NationsBank, N.A. (South)*, 183 F.3d 1269, 1275 (11th Cir.1999); *U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 136, 127 S.Ct. 2331, 168 L.Ed.2d 28 (2007).

The law does not distinguish between civil actions and administrative settlements in the manner defendants seem to assert it should. Indeed, such a distinction would lead to the nonsensical result

that PRPs would ask the EPA to sue them rather than bring an administrative action so insurers would then provide coverage for "suits." Conversely, insurers would have an incentive to lobby the EPA to bring administrative actions. Such disparate consequences were not the intent of CERCLA or the administrative settlement versus civil action paths provided for by statute.

Thus, the court finds the Alabama Supreme Court has ample basis to consider a PRP letter a "suit" sufficient to trigger insurance coverage. However, the court also finds that the Alabama Supreme Court could interpret an insurance contract clause such as the one relevant in this action to actually require a "suit" as opposed to an administrative action.

The parties agree that "no Alabama state court or any federal court applying Alabama law ha[s] ever addressed whether a PRP letter from the EPA satisfies the "suit" requirement under a liability policy. Defendants' brief in opposition to plaintiff's motion for summary judgment (doc. 162, at 12), citing to plaintiff's brief (doc. 22) at 1, 17, 19. Having considered the arguments of the parties, as well as having read extensive briefing regarding testimony of "experts" concerning how the Supreme Court of Alabama would rule, the court is of the opinion that the Supreme Court of Alabama should make the determination of whether a PRP letter from the EPA satisfies the "suit" requirement under a liability policy.

The Eleventh Circuit instructs that "[w]here there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie*[6] 'guesses' and to offer the

state court the opportunity to interpret or change existing law." *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916–17 (11th Cir.1995). Rule 18, Ala.R.App.P., allows a federal district court to certify a question of law to the Supreme Court of Alabama whenever "it shall appear ... that there are involved in any proceeding before [the federal court] questions or propositions of law of [Alabama] which are determinative of said cause and that there are no clear controlling precedents in the decisions of the supreme court of this state...." Rule 18, Ala.R.App.P., see also *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir.1997) ("[T]he only authoritative voice on Alabama law is the Alabama Supreme Court...."). "Resolution in this way avoids the unnecessary practice of guessing the outcome under state law and offers the state court an opportunity to explicate state law." *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1268 (11th Cir.2003) (citations omitted).

Memorandum Opinion and Order of December 14, 2011 (doc. 189).

 In order to establish a claim of bad faith refusal to pay under Alabama law, a plaintiff must prove: "(1) the existence of an insurance contract; (2) an intentional refusal to pay the claim; and (3) the absence of any lawful basis for refusal and the insurer's knowledge of that fact or the insurer's intentional failure to determine whether there is any lawful basis for its refusal." *Acceptance Ins. Co. v. Brown*, 832 So.2d 1, 16 (Ala.2001). "If [the plaintiff's] evidence fails to eliminate any arguable reason for denying payment, any fairly debatable reason on a matter of fact or a matter of law, he cannot recover under the tort of 'bad faith refusal [to

---

6. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

pay].'" *Nat'l Sec. Fire & Cas. Co. v. Bowen,* 417 So.2d 179, 185 (Ala.1982). A debatable or arguable reason is "a reason that is open to dispute or question." *Koch v. State Farm Fire & Casualty Co.,* 565 So.2d 226, 229 n. 4 (Ala.1990). "When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Davis v. Cotton States Mutual Insurance Co.,* 604 So.2d 354, 358–59 (Ala.1992) (internal quotes omitted). The burden on the plaintiff arguing the absence of a debatable reason is so great that, "in the 'normal' case, a plaintiff's bad-faith claim may not be submitted to the jury unless she shows that she is entitled to a directed verdict on the contract claim." *Alfa Mutual Fire Insurance Co. v. Thomas,* 738 So.2d 815, 822 (Ala.1999). Thus, " '[i]f any one reason for denial of coverage is at least 'arguable,' [a] court need not look any further,' and a claim for bad faith refusal to pay will not lie." *Weaver v. Allstate Ins. Co.,* 574 So.2d 771, 774 (Ala.1990) (quoting *McLaughlin v. Ala. Farm Bureau Mut. Cas. Ins. Co.,* 437 So.2d 86, 91 (Ala.1983)) (holding that to succeed at summary judgment, the defendant insurer only has the burden of showing "that it had a legitimate or arguable basis for the denial of the claim.").

▪ Applying the above law to the facts of this case, the court is of the opinion that the plaintiff's renewed motion for partial summary judgment on Bad Faith (doc. 125); is due to be denied and the defendants' motion for summary judgment seeking dismissal of plaintiff's claim for Bad Faith (Count III) (doc. 127) is due to be granted. Defendants had an arguable basis for denying plaintiff's claim, namely that they did not believe Alabama law required a duty to defend under an insurance contract upon an insured's receipt of a PRP letter. "[W]here a legitimate dispute exists as to liability, ... a tort action for bad faith refusal to pay a contractual claim will not lie." *Bowers v. State Farm Mut. Auto. Ins. Co.,* 460 So.2d 1288, 1290 (Ala.1984). In fact, no such requirement for PRP letters appeared in Alabama law until after the initiation of this litigation and certification of that very question to the Alabama Supreme Court. *See Alabama Gas,* 117 So.3d at 698 ("neither the courts of this State nor any federal court applying Alabama law has ever addressed the issue whether a PRP letter from the EPA satisfies the 'suit' requirement under a liability policy...").

Having considered the foregoing, and being of the opinion the plaintiff's motion for summary judgment is due to be denied and the defendants' motion is due to be granted;

It is therefore **ORDERED** by the court that the defendants' motion for summary judgment (doc. 127) on the plaintiff's bad faith claim is **GRANTED,** the court finding no genuine issues of material fact remain and that the defendants are entitled to judgment in their favor as a matter of law.[7]

It is further **ORDERED** by the court that, for the same reasons set forth herein, the plaintiff's motion for summary judgment on its bad faith claim (doc. 125) is **DENIED.**

### *ORDER*

Pending before the court is the plaintiff's motion for clarification or partial re-

---

**7.** Defendants also argue that there could be no bad faith failure to pay because there is no coverage under the relevant policies. Because the court has found no bad faith as set forth in this opinion, the court does not ad-dress this further argument. The court shall consider all of the parties' respective arguments concerning coverage issues by separate opinion.

consideration of the court's June 25, 2013, Memorandum Opinion and Order (doc. 215), a brief in support of said motion (doc. 215-1) and a correction to the brief in support (doc. 216). The defendants thereafter filed an opposition to said motion (doc. 218). Having considered the motion, brief and opposition, the court finds as follows:

In December 2010 this court found that the defendants had a duty to defend the plaintiff. That ruling has not changed.[1] However, plaintiff's current motion argues bad faith concerning the duty to defend as well as bad faith failure to pay. The court declines the opportunity to once again re-hash the torrid history of this action. The court's June 25, 2013, Opinion and Order specifically addressed bad faith on the failure to pay benefits under the policy. That is all it addressed. Even more specifically, the court found that defendants' denial of indemnity benefits was not taken in bad faith as this court certified whether a PRP letter constituted a "suit" for purposes of triggering coverage under an insurance policy to the Alabama Supreme Court. The Alabama Supreme Court answered that question in the affirmative. Because Alabama law was unsettled on this question, the court ruled that the defendants had not acted in bad faith in denying coverage.

The plaintiff confuses the issue further, arguing that "it is also well-established that the unreasonable failure to respond to a demand for coverage constitutes a constructive denial. . . . . it is also well established that bad faith is measured *at the time the carrier denies coverage.*" Plaintiff's brief at 5 (citations omitted, emphasis from plaintiff's brief). The plaintiff re-

quests the court "Clarify that the Opinion does not preclude presenting the issue of whether Travelers committed abnormal bad faith to the jury. To the extent that the Opinion would preclude Alagasco's claims based on abnormal bad faith, Alagasco respectfully asks the Court to reconsider those aspects of its ruling for the reasons described above." Plaintiff's brief at 6.

The distinction between "bad faith" and "abnormal bad faith" was recently set forth by the Hon. James H. Hancock in *Peoples v. Property and Casualty Ins. Co. of Hartford,* 2013 WL 1767796 (N.D.Ala. 2013). He wrote:

> To succeed on a claim for bad faith failure to pay an insurance claim a plaintiff may proceed using two different theories—normal and extraordinary bad faith. Here, Plaintiffs proceed using both. . . .
>
> To pursue a "normal" bad faith claim, Plaintiffs must prove the following:
>
> (a) an insurance contract between the parties and a breach thereof by the defendant;
>
> (b) an intentional refusal to pay the insured's claim;
>
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
>
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and
>
> (e) if the intentional failure to determine the existence of a wrongful basis is relied on, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

---

1. The plaintiff seemingly seeks to reopen this ruling, arguing "Ms. Tarczanin never consulted with counsel nor otherwise evaluated whether the PRP Letter or the Information

Request should be deemed a suit *triggering the duty to defend.*" Plaintiff's brief, at 4 (emphasis added, citation omitted).

*Id.,* at \*7; citing *Employees' Benefit Assn. v. Grissett,* 732 So.2d 968, 976 (Ala.1998); *Smith v. MBL Life Assurance Corp.,* 589 So.2d 691, 697 (Ala.1991). This court has previously ruled that the defendants had a "reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason)" for its refusal to pay the insured claim, and declines to revisit that ruling now.

Moving on to "abnormal" or "extraordinary" bad faith, Judge Hancock continued

Under the second theory of an "abnormal" bad faith claim, the insured must show: "(1) that the insurer failed to properly investigate the claim or subject the results of the investigation to a cognitive review and (2) that the insurer breached the contact for insurance coverage when it refused to pay the insured's claim." *Simmons v. Congress Life Ins. Co.,* 791 So.2d 371, 379 (Ala. 2000).

*Peoples v. Property & Cas. Ins. Co. of Hartford* 2013 WL 1767796, \*7–8 (N.D.Ala. 2013). Also considering these two facets of bad faith failure to investigate, in *Ware v. Nationwide Ins. Co.,* the Hon. Scott Coogler noted that "[p]ractically, the effect is that in order to prove a bad-faith-failure-to-investigate claim, the insured must prove that a proper investigation would have revealed that the insured's loss was covered under the terms of the contract." *Id.,* 2013 WL 1680514, \*8 (N.D.Ala.2013), citing *State Farm Fire & Cas. Co. v. Slade,* 747 So.2d 293, 318 (Ala.1999).

■ Thus, to succeed on a claim of "abnormal bad faith" the plaintiff must prove, at a minimum, either that defendants intentionally or recklessly failed to investigate a claim, or that defendants manufactured a debatable reason to deny a claim. Although the plaintiffs have made such arguments to this court repeatedly, the evidence before the court demonstrates that defendants did investigate plaintiff's claim and had an arguable or debatable reason for denying coverage. Because there was an arguable reason to deny coverage, the plaintiffs cannot show that defendants manufactured a debatable reason for the same.

■ The court in *Ware* continued, "... an abnormal bad faith claim is still ultimately dependent on the breach of contract claim, since a plaintiff may not recover under an abnormal bad faith claim unless the defendant is found liable under the breach of contract theory as well." *Id.,* citing *Slade,* 747 So.2d at 318 (stating that, while abnormal bad faith cases are excepted from the JML standard of proof, the plaintiff must still ultimately "prove an entitlement to benefits under the policy"). In other words, the plaintiff must prevail on an entitlement to benefits before a bad faith failure to investigate claim may proceed to a jury.

In sum, there is nothing before the court at this time for it to reconsider or clarify. Having considered the foregoing, and being of the opinion the motion for clarification or partial reconsideration is due to be denied;

It is therefore **ORDERED** by the court that said motion (doc. 215) be and hereby is **DENIED.**

**DONE** and **ORDERED** this the 16th day of July, 2013.