[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 30, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-14145

_____

D. C. Docket Nos. 00-3646 CV-N-W
& 00-03647-CV-N-W

PAMELA SUE JONES,

Plaintiff,

versus

DILLARD'S, INC.,

Defendant.

SARAH CROCKER, LANA
HOUSE, JAMES THOMPSON,
DEBORAH T. GIBBONS,

Plaintiffs,

GERDA BYRD,

Plaintiff-Appellant,

versus

DILLARD'S, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(May 30, 2003)**

Before DUBINA and FAY, Circuit Judges, and DOWD[*], District Judge.

DOWD, District Judge:

The above-captioned appeal from the Northern District of Alabama involves the discrimination claims asserted by Plaintiff-Appellant Gerda Byrd. Byrd was one of six plaintiffs who alleged that Defendant-Appellee Dillard's, Inc., took some adverse action against them in their jobs because of their age. Byrd's claims are grounded in the federal Age Discrimination in Employment Act, the Alabama Age Discrimination in Employment Act, and Alabama statutory fraud. The district court granted Dillard's motion for summary judgment as to all defendants on all claims. Byrd was the only plaintiff to appeal; thus, only her claims are at issue.

_____

[*] Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

# I. BACKGROUND

Plaintiff-Appellant Gerda Byrd began working for Gayfer's Department Store in Tuscaloosa, Alabama, in 1975. In August 1998, Dillard's, Inc. ("Dillard's" or the "Company"), purchased the Tuscaloosa store, but continued to employ its existing workforce. For the five years preceding the buyout, Byrd held the position of office and credit manager. Dillard's offered no such position within its organizational structure, but placed her in an assistant area sales manager ("AASM") position in order to keep her at the same rate of pay. Shortly thereafter, however, Byrd learned from Richard Lucas, also an AASM, that the store was eliminating AASM positions and that the store had no intention of ever employing AASMs again.

In May 1999, as part of its restructuring, Dillard's offered Byrd an opportunity to sell cosmetics on the sales floor. She declined, however, because she saw lagging store sales as a bad sign for commissions in that department. Moreover, Byrd feared that she would eventually be terminated for failing to reach sales-per-hour ("SPH") goals. Rather than risk termination, Byrd considered her other options. As a manager with her position being eliminated, she was entitled to fill another managerial position in the store or take severance pay. She opted

for the latter. Dillard's approved her severance request in May 1999, and she left in the same month. In all, Byrd received forty-seven weeks of severance pay.

On June 8, 1999, Byrd spoke to Andy Poole, operations manager at Dillard's, who told her that the company instructed him to hire two new AASMs. (Byrd Dep. Tr. at 55, Ex. 2 at 5 (D. Ct. Doc. No. 15).) Byrd recorded her reaction to this news in some typewritten notes:

> This happens after I was told [that] the store could not afford any AASM[]s ... because they were not making their figures. Seems to me [that] I was lied to!!! As soon as I find out there are two new AASM[s] in place[,] I will file a lawsuit against Dillard[']s. This lawsuit will be for [a]ge discrimination and [w]age discrimination. Seems to me [that] they wanted to get rid of me ... by demoting me to the floor, and[,] after several paycuts [] because I could not meet my SPH[,] fire me.

(Byrd Dep. Tr. at 45, Ex. 2 at 5.)

In September 1999, Tiffany Winters applied for an AASM position at the Tuscaloosa store, and was hired a month later. Byrd testified that she heard Poole say that Winters was "young and pretty," and that he "had to hire her." (Byrd Dep. Tr. at 67, 70.)

At the time Byrd left the company, she was only aware of poor sales as the Company's reason for eliminating the AASM position. She admitted having no evidence that the store manager knew at the time that the position would be

4

reinstated later that year. Byrd testified that, despite the lack of evidence, she felt certain someone in the company knew her former position was not really eliminated because Winters was hired in that position so soon after she left.

## II. PROCEDURAL POSTURE

Byrd filed her administrative charge with the Equal Employment Opportunity Commission ("EEOC") on February 24, 2000. In December 2000, Byrd and the other plaintiffs filed a complaint in federal court, alleging claims under the federal Age Discrimination in Employment Act ("ADEA"), the Alabama Age Discrimination in Employment Act ("AADEA"), and an Alabama fraud statute.

Dillard's filed a motion for summary judgment as to the claims of Byrd and the other plaintiffs. The Company argued that Byrd's claim was time-barred because Byrd failed to file her EEOC charge within 180 days of any alleged act of discrimination. Dillard's argued that her state discrimination claim was also time-barred because the AADEA simply adopted the ADEA's limitations period. Alternatively, it argued that Byrd had no direct or circumstantial evidence of age discrimination, which required judgment in its favor on the merits. With respect to Byrd's fraud claim, Dillard's argued in its motion that no evidence showed it made a false representation to her, but that only another store employee indicated that

the AASM position was being permanently eliminated. Further, she did not actually rely on any such statements, that any reliance was unreasonable, that she had no evidence of an intent to deceive, and that she did not suffer cognizable damages.

The district court granted the Company's motion for summary judgment as to all of Byrd's claims. It found that Byrd had reason to believe she had suffered age discrimination before the 180 days preceding her EEOC charge. Specifically, the district court found that her pre-resignation discussions with co-workers and her June 8, 1999, discovery of the reinstatement of the AASM position were sufficient to start the running of the statute of limitations. In addition, the court found that the AADEA's statute of limitations was, at most, 180 days because the language of the statute mirrored that of the ADEA. Thus, the court held that Byrd's AADEA claim was also time-barred. Finally, the district court found that there was no evidence the Company's allegedly false statement caused her any injury. Instead, the court found that Byrd resigned because she was being transferred to cosmetics and did not want to work in that department, not because of the elimination of the AASM position.

The court also denied Byrd's motion to alter or amend its judgment. (Order dated June 25, 2002, at 3 (D. Ct. Doc. No. 31).)

### III. ANALYSIS

The Court reviews *de novo* a lower court's decision to grant summary judgment. Pennington v. City of Huntsville, 261 F.3d 1262, 1265 (11th Cir. 2001); Patrick v. Floyd Med. Ctr., 201 F.3d 1313, 1315 (11th Cir. 2000). A district court's entry of summary judgment should be affirmed if, after construing the evidence in a light most favorable to the non-movant, the reviewing court finds that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); William Penn Life Ins. Co. of New York v. Sands, 912 F.2d 1359, 1361 (11th Cir. 1990).

We now turn to examine the district court's rulings on each of Byrd's claims under this legal standard. As discussed herein, we reverse on the ADEA claim, certify a question to the Alabama Supreme Court on the AADEA claim, and affirm on the fraud claim.

### A. The ADEA Claim

The period in which a person must file a complaint with the EEOC depends on whether a state is a "deferral state" under the ADEA. Deferral states are those that have a state agency equivalent to the EEOC. See 29 U.S.C. §§ 626(d), 633 (1999); see also American Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111 (1st Cir. 1998); Rhodes v. Guiberson Oil Tools Div., 927 F.2d 876, 878 (5th Cir.

1991).  In these states, a person must file an age discrimination claim with the EEOC within 300 days after the alleged unlawful practice occurred.  29 U.S.C. § 626(d)(2).  In states without a state equivalent to the EEOC, the ADEA requires a charge to be filed within 180 days.  29 U.S.C. § 626(d)(1).  Alabama has a state discrimination statute, the AADEA, but does not have an EEOC equivalent.  Thus, the Court examines the timeliness of Byrd's ADEA claim in the context of the 180-day rule.  The parties do not dispute that the applicable charging period is 180 days.

What the parties dispute, however, is when that period starts to run.  The proper focus for when a statute of limitations begins to run is the time of the discriminatory act.  Chardon v. Fernandez, 454 U.S. 6, 8 (1981); Nance v. Maxwell Fed. Credit Union, 186 F.3d 1338, 1341 (11th Cir. 1999).  Three possible dates can be construed as the unlawful practice that triggered the limitations period: (1) April or May 1999, when Byrd was told that her position was being eliminated; (2) June 12, 1999, when she took notes about her discovery of two new AASMs to be hired and her plans to sue for age discrimination; or (3) November 1, 1999, when she learned that a 28-year-old woman had been hired to fill her former  AASM position.

Byrd argues in support of the third date. She says that, at the time her position was eliminated, she was only aware of purported financial reasons for the elimination of her job. Byrd asserts that she could not file a complaint until she became aware of the Company's discriminatory intent. On this date, she learned from Poole that Winters had been hired in her place. Thus, Byrd contends, the limitations period did not begin to run until November 1, 1999, bringing her EEOC charge filed on February 24, 2000, within the limitations period.

Alternatively, Byrd argues that, even if the Company's discriminatory act occurred earlier, the limitation period should be equitably tolled based on the evidence that was available to her. Relying on Sturniolo v. Sheaffer, Eaton, Inc., 15 F.3d 1023 (11th Cir. 1994), Byrd stresses that mere suspicion of age discrimination, absent personal knowledge of discrimination, will not constitute pretext. She says that, like the plaintiff in Sturniolo, she did not know she was a victim of discrimination until she confirmed that Dillard's had hired a younger person to fill her former position. Because she could not have based a claim on rumor, she needed to wait until she knew that discrimination occurred. Thus, she argues, summary judgment was improper as to her ADEA claim.

Dillard's argues in support of the second date, or when she took notes about her suspicions of age discrimination. Her notes are dated June 12, 1999, in which

9

she described hearing from Poole that two AASMs were to be hired. Dillard's also asserts that, unlike Sturniolo, where the plaintiff had no reason to doubt the employer's explanation for several months, Byrd had cause to doubt the reasons given for her transfer to cosmetics long before the 180 days leading to her EEOC charge.

Reviewing the case law in this area, we observe that some employers will seek to avoid liability by observing the letter of the law, while truly ignoring its spirit. See Kolstad v. Am. Dental Assoc., 527 U.S. 526, 551 (1999) ("An employer[] may, for example, express hostility toward employment discrimination laws or conceal evidence regarding its "true" selection procedures because it knows they violate federal law."); see also Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987) (noting that direct evidence of discrimination is rarely available to the plaintiff, which, presumably, is because malicious employers disguise their conduct). The malicious employer can attempt to circumvent ADEA liability by timing its discriminatory acts. Firing an employee for "financial" reasons, concealing the true motivation (i.e., age), and then replacing that employee with someone outside of the protected class six months later is all that may be necessary to discriminate illegally, yet escape liability. If the employee acts on a mere suspicion, he has acted prematurely: the employee's claim will

10

likely fail because the truly damning evidence has not yet emerged–and will not emerge given the defendant's revelation of the suit. If, on the other hand, the employee lies in wait for the surfacing of telltale evidence, i.e., the hiring of a younger employee, the cunning employer will escape liability by postponing the hiring of a replacement for at least six months. Thus, an employee thrust into this situation faces two equally unattractive options, neither furthering the ADEA's purpose.

Disputes of this sort can be traced back as early as 1975 in the case of Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924 (5th Cir. 1975).[1] In Reeb, the defendant-employer wrote a letter to the plaintiff-employee indicating that her monthly contract of employment would not be renewed for financial reasons. The letter also indicated that she would be terminated effective immediately. The plaintiff's position was refilled only two months later, but she did not learn this until several months later. The district court dismissed the case because the plaintiff had not filed her administrative complaint within the applicable charging period.[2]

---

[1] This Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981, Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), which would include Reeb.

[2] The applicable charging period required an administrative complaint to be filed within 90 days.

11

The plaintiff prevailed on appeal. In a pronouncement that would be echoed by various circuits across the country, the Fifth Circuit held that, under equitable modification, the applicable limitations period did not begin to run "until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his [or her] rights," id. at 930. See, e.g., Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1389 (3d Cir. 1994); Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1531-32 (11th Cir. 1992); Vaught v. R.R. Donnelley & Sons Co., 745 F.2d 407, 410-12 (7th Cir. 1984); Wilkerson v. Siegfried Ins. Agency, Inc., 683 F.2d 344, 345-46 (10th Cir. 1982).

The effect of Reeb was to close the loophole used by the malicious employer to avoid age discrimination liability. "[W]here wrongful concealment of facts is alleged, ... a party responsible for such wrongful concealment is estopped from asserting the statute of limitations as a defense." Reeb, 516 F.2d at 930. "'[N]o [person] may take advantage of his [or her] own wrong." Id. (quoting Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 232-33 (1959)). These equitable considerations have been repeated numerous times in subsequent decisions of several courts. See, e.g., Oshiver, 38 F.3d at 1388-89; English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987).

12

Building on <u>Reeb</u> is the case of <u>Sturniolo</u>, where the plaintiff-employee was a sales manager who was fired as part of, he was told, a reorganization and consolidation of positions in the company.  The plaintiff discovered, however, that the company replaced him within three months with a significantly younger employee.  The district court, refusing to apply any equitable modification, granted summary judgment to the employer for the plaintiff's failure to bring a charge to the EEOC within 180 days of his termination.

This Court reversed, holding that a genuine issue of material fact precluded summary judgment on whether equitable modification applied.  <u>Id.</u> at 1025-26.  To reach its decision, the Court looked to the elements of a *prima facie* case for age discrimination, <u>id.</u> at 1025,[3] and made the following observations about the evidence: "At the time of his discharge, [the plaintiff] believed [his employer's] reasons for terminating him were business related and [he] was not aware of the [company's] intent to hire a younger individual to replace him."  <u>Id.</u>  The plaintiff was told that the region he managed was being consolidated as part of another region.  <u>Id.</u> at 1026.  Although the evidence suggested that the plaintiff

---

[3]  The elements it looked to were: "the plaintiff is in the protected group; (2) the plaintiff applied and was qualified for a job for which the employer was seeking applicants; (3) the plaintiff was rejected or demoted; and (4) following the plaintiff's discharge, the employer replaced him with someone of comparable qualifications outside the protected class."  <u>Sturniolo</u>, 15 F.3d at 1025.

13

"suspected" age discrimination at the time of his discharge, "a discharged employee's mere suspicion of age discrimination, unsupported by personal knowledge of discrimination, will not constitute pretext." Id. It was not until several months later that the plaintiff learned of his younger replacement. Id. "[A]t that point[,] [the plaintiff] had knowledge of facts sufficient to support a prima facie case of age discrimination." Id.

In light of the teachings of Sturniolo and the other cases we have cited, we examine the evidence in the instant case. First, Byrd testified at her deposition that she learned the AASM positions were being discontinued for financial reasons. (Byrd Dep. Tr. at 13, 22-23.) Indeed, she had seen company documentation indicating that store sales were low. (Byrd Dep. Tr. at 76.) Byrd also testified that she was apprehensive about taking a cosmetics job because of her concern for meeting sales goals in light of overall store sales. (Byrd Dep. Tr. at 12.) This evidence suggests that the reason given by Dillard's for the elimination of Byrd's position not only appeared business-related, but also believable. A person with reasonably prudent regard for her rights would not suspect a cause of action for age discrimination at this point.

Second, Byrd testified that, on June 8, 1999, the operations manager told her he would be hiring two new AASMs. (Byrd Dep. Tr. at 55-57.) This prompted

14

Byrd to take notes about her budding suspicions and intent to file suit once her former position was filled by a younger employee. (Byrd Dep. Tr. at 45-46.) At this point, the evidence available to Byrd is thin. She has no evidence of the Company's intent to hire a younger employee. About all she knows is that the AASM position is being reinstated contrary to what she previously heard. While Byrd has no other evidence, she suspects that her job was eliminated because of her age. Nevertheless, Sturniolo teaches that Byrd's suspicion, without more, is insufficient to establish pretext. Not until November 1999 is her suspicion confirmed by the hiring of Winters. At this time, she has sufficient evidence to support her age discrimination claim.

Again, the proper focus for when a statute of limitations begins to run is the time of the discriminatory act. Chardon, 454 U.S. at 8; Nance, 186 F.3d at 1341. This rule would suggest that, among the three above dates, the first choice, April or May 1999, was the appropriate starting date of the limitations period for Byrd's claims. The Court finds, however, that this case bears sufficient similarity to Sturniolo to apply equitable tolling. As such, the charging period did not begin until Byrd learned of the Company's hiring of Winters, or November 1, 1999.

Moreover, cases decided by this Court after Sturniolo suggest that November 1, 1999, is the correct starting date. In Hargett v. Valley Federal

15

Savings Bank, 60 F.3d 754 (11th Cir. 1995), the plaintiff-employee worked as a probationary employee for the defendant-bank for just over five months, from June 1990 to November 1990. Then, the defendant discharged plaintiff, citing market conditions as its reason. In early 1991, however, during a visit to the bank, the plaintiff learned of a younger employee purporting to perform his former duties. On November 15, 1991, the plaintiff filed an EEOC questionnaire, alleging that the bank had discriminated against him on the basis of his age. On February 11, 1992, he filed a sworn charge of discrimination with the EEOC alleging, among other things, age discrimination. On September 25, 1992, he filed suit for age discrimination in federal district court. The court granted summary judgment to the bank on the basis that the plaintiff's EEOC charge was untimely.

Affirming the district court, this Court looked to the November 15, 1990, date that was cited by the plaintiff to determine that his November 1991 EEOC questionnaire and February 1992 EEOC charge were filed outside the 180-day charging period. Id. at 760-61. "A plaintiff, who is aware that he is being replaced in a position, which he believes he is able to perform, by a person outside the protected age group, knows enough to support filing a claim." Id. As liberally as the Court could construe the filing date of plaintiff's charge, his excessive delay, which exceeded the applicable limitations period, was

16

unmistakable. As a consequence, this Court upheld the district court's characterization of the plaintiff's age discrimination claim as untimely.

In another case, Turlington v. Atlanta Gas Light Co., 135 F.3d 1428 (11th Cir. 1998), the plaintiff was a longstanding employee of the defendant, accumulating almost thirty years of service at the time he left the defendant-utility company. In February 1990, he was demoted for failing to demonstrate job improvement during the prior year. The plaintiff presented evidence that, beginning at the time of his demotion, the utility denied him the same training offered to his younger colleagues. He was told that he was incapable of learning new skills. By July 1993, he had accumulated four consecutive annual reviews that rated his performance "below acceptable." He was transferred to another department. The plaintiff then obtained counsel, who prepared a written protest against the transfer, but did not yet file an administrative charge. Then, on October 12, 1994, the utility informed the plaintiff that he would not be considered for a position for which he recently applied.

On December 16, 1994, the plaintiff filed a charge with the EEOC, and subsequently filed suit in federal court. The utility filed for summary judgment, arguing among other things that the plaintiff's claims were untimely. The district court agreed, and granted summary judgment to the utility. The plaintiff appealed,

17

but only as to his ADEA claim for the October 1994 denial of another position. He contended that the decision to turn him down was based on poor evaluations, which, in turn, were based on the utility's improper denial of training.

This Court affirmed the decision of the district court. It held that the utility's allegedly discriminatory act of denying the plaintiff a new position was time barred. Id. at 1435. The plaintiff conceded that the October 1994 denial of the position he applied for was not discriminatory on its face, but argued that the failure to train from February 1990 to July 1993 gave rise to the utility's denying him the position. A plaintiff, however, may not use time-barred evidence to help establish a *prima facie* case of discrimination. Id. "[E]vidence of [the utility's] prior training practices cannot render discriminatory [its] facially neutral decision to deem [the plaintiff] unqualified for the [position]." Id. Since the denial of training occurred years ago, plainly outside the applicable statute of limitations, the Court refused to consider it as part of the plaintiff's claim of refusal to hire.

The panel also rejected the application of equitable tolling. Id. at 1435. The charging period "might have been tolled if, in the period prior to the 180 days before filing the initial EEOC charge, [the plaintiff] had no reason to believe he was a victim of unlawful discrimination." Id. (relying on Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 660 (11th Cir. 1993)). Seeing evidence, however,

18

that the plaintiff protested vigorously against the utility's failure to provide equal training opportunities, the Court refused to apply equitable tolling to preserve his rights. Id. Thus, the limitations period barred the plaintiff's claims.

In both Hargett and Turlington, the plaintiffs had sufficient evidence of their age discrimination claims to file an EEOC charge within the limitations period. In Hargett, the plaintiff learned of his younger replacement, but still waited eleven months to complete an EEOC questionnaire and another three months before filing an EEOC charge. In Turlington, the plaintiff had sufficient evidence of age discrimination when he was excluded from training programs available to his younger colleagues. His knowledge of this evidence was demonstrated by his vigorous protest and soliciting the help of a lawyer to combat his employer's practices. These decisions are wholly consistent with the rationale of the early case of Reeb: The applicable limitations period did not begin to run until the facts supporting a cause of action became apparent or should have became apparent to a reasonably prudent person with concern for his or her rights.

Unlike the plaintiffs in Hargett or Turlington, Byrd had only a mere suspicion of age discrimination until Dillard's hired Winters in her stead. Until then, the record makes clear that she only knew her position was being eliminated, that the Company's reasons for the elimination seemed legitimate from what she

19

knew about store sales, and that Dillard's had suspiciously reinstated the AASM position in the store.

As with the plaintiff in <u>Sturniolo</u>, equitable tolling operates to save Byrd's claims. Again, with no evidence supporting a cause of action for age discrimination until Dillard's hired Winters, the third option is the only one consistent with our precedent and the facts of this case. Moreover, we are unwilling to close the door on her claims based simply on her handwritten note that she suspected age discrimination. Accordingly, the district court erred in granting summary judgment on Byrd's ADEA claim.[4]

## B. The AADEA Claim

Substantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court. <u>Moreno v. Nationwide Insur. Co.</u>, 105 F.3d 1358, 1360 (11th Cir. 1997) (citing <u>Forgione v. Dennis Pirtle Agency, Inc.</u>, 93 F.3d 758, 761 (11th Cir. 1996)). Resolution in this way avoids the unnecessary practice of guessing the outcome

---

[4] Dillard's also argues that it is entitled to summary judgment on the merits of Byrd's ADEA claim. The district court, however, did not address that issue. Although we have the authority to affirm an entry of summary judgment on other grounds, <u>Robert Suris Gen. Contractor Corp. v. New Metro. Fed Sav. & Loan Ass'n</u>, 873 F.2d 1401, 1406 n.8 (11th Cir. 1989), we make no ruling as to the merits of Byrd's ADEA claim, leaving that issue for the district court to address in the first instance. <u>See</u>, <u>e.g.</u>, <u>Wilkerson</u>, 270 F.3d at 1322; <u>Uboh v. Reno</u>, 141 F.3d 1000, 1007 (11th Cir. 1998).

under state law and offers the state court an opportunity to explicate state law.  Id.

In this case, we find sufficient cause to certify a question to the Alabama Supreme

Court with respect to the limitations period under the Alabama Age

Discrimination in Employment Act.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF ALABAMA

PURSUANT TO RULE 18 OF THE ALABAMA RULES OF APPELLATE

PROCEDURE.

TO THE SUPREME COURT OF ALABAMA AND THE HONORABLE

JUSTICES THEREOF:

Byrd argues that her AADEA claim is not time-barred because the

AADEA's statute of limitations is two years and that she filed her claim within

that period.  Byrd contends that the 180- and 90-day ADEA limitations periods

referred to in the Alabama statute can only be interpreted as referring to the federal

administrative requirements.  Byrd also notes that at least one federal district court

has held that the AADEA's statute of limitations is two years.[5]  (Appellant's Br. at

---

[5]  We note that, since the parties have filed their briefs, another federal district court has come up with a solution for interpreting the AADEA's statute of limitations, Robinson v. Regions Fin. Corp., 242 F. Supp. 2d 1070, 1076-77 (M.D. Ala. 2003).  This court proposed a variable rule, where a claim would be deemed timely if filed within the longer of (a) the time prescribed for filing a federal ADEA claim or (b) 450 days of the discriminatory act.  Id.

18 (citing <u>Dooley v. AutoNation USA Corp.</u>, 218 F. Supp. 2d 1270, 1276 (N.D. Ala. 2002).) Alternatively, Byrd argues that if this Court finds that a 180-day limitation period should apply, the period did not begin to run until Byrd discovered that Dillard's hired the 28-year-old Winters, or the time period was equitably tolled until she found out about the hiring.

Dillard's responds that Byrd's contention that the AADEA has a two-year statute of limitations ignores the plain meaning of the statute. It contends that the AADEA simply incorporates the statute of limitations of the ADEA. Dillard's also contends that the Alabama federal court incorrectly decided that the AADEA had a two-year statute of limitations and refers to an Alabama state case which held that, like the ADEA, plaintiffs have 90 days to file suit after the EEOC issues its notice of the right to sue. (Appellee's Br. at 23 (citing <u>Herbst v. Raytheon Co., Inc.</u>, No. CV-00-485, slip. op. at 2 (Ala. Cir. Ct. Dec. 12, 2000).) Therefore, Dillard's contends, Byrd's AADEA claim is time-barred because she filed her claim outside the statute of limitations period. Byrd reiterates her assertions in her reply brief and adds that the Alabama state case on which Dillard's relies was incorrectly decided.

The AADEA provides in relevant part:

> Any employment practice authorized by the federal Age Discrimination in Employment Act shall also be authorized by this article and the remedies, defenses, and statute of limitations, under this article shall be the same as those authorized by the [ADEA] except that a plaintiff shall not be required to pursue any administrative action or remedy prior to filing suit under this article.

Ala. Code § 25-1-29 (1997). The Alabama Code also provides a two-year default statute of limitations where the appropriate limitation period is not enumerated specifically in the code. Ala. Code. § 6-2-38(l) (1984).

On its face, the AADEA provides that it has the same statute of limitations as the ADEA. The ADEA, however, has two such limiting periods: 180 days and 90 days. Under the ADEA, a plaintiff has 180 days from the occurrence of the allegedly unlawful practice to file a charge of age discrimination with the EEOC. Once a plaintiff has received notice that the EEOC has dismissed the charge, she has 90 days to file her suit. 29 U.S.C. § 626(d)(1) and (e). Thus, the ADEA's statutes of limitations are intertwined with its administrative requirements.

Because of how the limitations operate in the ADEA, it is difficult, if not impossible, to transfer them to the AADEA. For example, does a plaintiff have to file suit under the AADEA within 90 or 180 days of the allegedly unlawful conduct, or does a plaintiff receive a combined total of 270 days to file suit? Even

23

if a plaintiff were given 270 days, this would still not be the same amount of time given a plaintiff under the ADEA because, under the ADEA, the 90 days do not begin to run until the plaintiff has received notice from the EEOC that a claim has been dismissed, 29 U.S.C. § 626(e); <u>Santini v. Cleveland Clinic Florida</u>, 232 F.3d 823, 825 (11th Cir. 2003). Alternatively, does the state default rule apply? As shown here, we can only guess as to whether the statute of limitations precludes Byrd's AADEA claim.

The Alabama Supreme Court has not answered this question. The state appellate courts offer no definitive guidance. Therefore, we certify the question to the Alabama Supreme Court as follows: WHAT IS THE APPLICABLE LIMITATIONS PERIOD FOR A CLAIM BROUGHT UNDER THE AADEA?

To facilitate the resolution of this question, we direct the Clerk to transmit the entire record of this case, together with copies of the parties' briefs, to the Alabama Supreme Court.

### C. <u>The State-law Fraud Claim</u>

Byrd asserts Alabama courts have consistently held that employees can maintain actions against their former employers for fraud in connection with acceptance, termination, or conditions of employment. Byrd alleges that Dillard's committed fraud when it misrepresented to her the material fact that the AASM

position was being permanently eliminated, intending to deceive her about the possibility of reinstating the AASM position. Byrd contends that her reliance was reasonable because she observed a decrease in business and found plausible the story about eliminating the position. Finally, Byrd contends that she was injured by the Company's misrepresentations because she resigned under the belief her position was being eliminated and was forced to work at a significantly lower rate of pay and suffered great emotional distress.

Dillard's responds that it did not commit fraud because it made no material misrepresentation to Byrd, as her position was eliminated because of budget constraints. Dillard's asserts that Byrd has not shown any evidence of an intent to deceive at the time Dillard's told her that her position was being eliminated. The Company notes that Byrd's reliance on its alleged misrepresentation was unreasonable because she jumped to the conclusion that she would not be successful in the cosmetics area, did not talk to anyone working in the cosmetics area, and did not attempt to work in that area before resigning. Dillard's further asserts that Byrd suffered no damages because she made more money with the combination of her severance and her Stein Mart pay than she would have received in her AASM position. In her reply, Byrd reiterates her fraud claim and

25

adds that the store manager told her and another employee that Dillard's was permanently eliminating the AASM position.

Under Alabama law, the elements of fraudulent misrepresentation are: "(1) a misrepresentation of material fact; (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied upon by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." Brushwitz v. Ezell, 757 So. 2d 423, 429 (Ala. 2000); Ala. Code § 6-5-101 (1975).

Even construing the evidence in a light most favorable to Byrd, the district court correctly granted summary judgment on her fraud claim because she did not meet all of the required elements. Specifically, as the district court pointed out, Byrd did not present evidence that provided any genuine issue of material fact as to the fourth prong of the fraud claim, i.e., that damage was caused as a proximate consequence of the alleged misrepresentation. Byrd did not resign from Dillard's because she was told that the AASM position was being eliminated. She did not want to work in cosmetics because she did not think that she could sell enough products to equal her previous salary. The evidence does not support that she made any effort to investigate whether she actually could match her previous salary if she chose to sell cosmetics. Therefore, given the reasons for her

26

resignation, her reduced income after she left Dillard's was not a proximate consequence of the Company's alleged misrepresentation. Accordingly, because Byrd cannot satisfy all the elements of a fraud claim, this Court should affirm the district court's dismissal of that claim.

## IV. CONCLUSION

The district court erred in granting summary judgment to Dillard's on Byrd's ADEA claim. Therefore, we reverse the district court on the ADEA claim, and vacate the entry of summary judgment to Dillard's. We delay remand, however, until the Alabama Supreme Court has an opportunity to define the applicable limitations period to Byrd's claim under the AADEA. The entire record in this case, together with copies of the briefs of the parties, shall be transmitted herewith. Further, the district court properly granted summary judgment to Dillard's on Byrd's state-law fraud claim. Therefore, we affirm the district court's judgment on this claim.

AFFIRMED IN PART, REVERSED AND VACATED IN PART, AND QUESTION CERTIFIED.