VINSON, District Judge,
dissenting:
Although every case is important to the litigants involved, not every case is independently significant. But this one is, and it has the potential to create bad law in two important areas. The majority first holds — and it is the only court ever to do so — that Section 4(a)(2) of the ADEA authorizes disparate impact claims brought by job applicants. It gets there by finding that Section 4(a)(2) is ambiguous and that Mr. Villarreal’s reading of the statute is *1307 reasonable, thereby warranting deference to the EEOC’s longstanding position that it protects applicants for hire. The majority further holds — contrary to well established law — that such plaintiffs may be entitled to the “extraordinary remedy” of equitable tolling, notwithstanding the total absence of any plausible claim (let alone any evidence) of “extraordinary circumstances” to justify it. I strongly disagree on both points and must respectfully dissent.
I.
Section 4(a) of the ADEA makes it unlawful for an employer:
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s age; [or]
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual’s age[.]
29 U.S.C. § 623(a)(l)-(2). Based on its plain language, the statute clearly protects both employees and job applicants from disparate treatment in Section 4(a)(1), but it only protects employees in Section 4(a)(2).
In Smith v. City of Jackson, Miss., 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005), the Supreme Court noted this important distinction and held that the ADEA authorizes disparate impact claims pursuant to Section 4(a)(2). Significantly, the entire Court recognized that disparate impact claims are not available under Section 4(a)(1) since that section is limited to disparate treatment, so disparate impact liability exists only under Section 4(a)(2). See id. at 236 n. 6, 125 S.Ct. at 1542 n. 6 (plurality); accord id. at 243, 125 S.Ct. at 1546 (agreeing with the plurality) (Scalia, J., concurring).
The plaintiffs in Smith were existing employees. The question presented in this case is whether job applicants can pursue disparate impact claims under Section 4(a)(2). The majority holds that they can, but this is contrary to the plain language of Section 4(a)(2) (which, as indicated above, clearly only protects employees); and, as will be seen infra, it is contrary to every other court that has considered this issue, including the opinions of eight Supreme Court Justices in Smith.[1]
Two “key textual differences” between Section 4(a)(1) and (a)(2) make clear that the majority is wrong. Cf. id. at 236 n. 6, 125 S.Ct. at 1542 n. 6 (noting that the differences between the two paragraphs are important in determining the availability of disparate impact claims). First of all, while Section 4(a)(1) broadly prohibits discrimination against “any individual,” Section 4(a)(2) is much more limited. It only prohibits the employer from “limiting], segregating], or classifying] his employees ” in any manner that adversely affects them based on age. (Emphasis added.) The phrase “his employees,” including the use of the possessive “his,” is critically important as it limits the scope of Section 4(a)(2) to those actions that an employer takes against employees. This limiting phrase is clear and unambiguous. A job applicant is, by definition, not an employee.[2]
Second, unlike Section 4(a)(1), which prohibits an employer from “failing] or refusing] to hire” a person based on age, Section 4(a)(2) makes no reference to hir *1308 ing decisions at all. In other words, Congress expressly included job applicants within the protections of the first paragraph of Section 4(a) (the disparate treatment provision), but it then omitted them in the very next paragraph (the disparate impact provision). As the Supreme Court has frequently said (and as the majority itself has recognized): “Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another.” Department of Homeland Sec. v. MacLean, - U.S. -, -, 135 S.Ct. 913, 919, 190 L.Ed.2d 771 (2015); see also National Federation of Independent Business v. Sebelius, - U.S. -, -, 132 S.Ct. 2566, 2583, 183 L.Ed.2d 450 (2012) (“Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally”). This is particularly so where, as here, the two statutory provisions are right next to each other. See, e.g., MacLean, 135 S.Ct. at 919 (“The interpretative canon that Congress acts intentionally when it omits language included elsewhere applies with particular force ... [where the omitted phrase is used] in close proximity.”); see also Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (stating that if Congress intended a particular statutory result, “it presumably would have done so expressly as it did in the immediately [preceding] subsection.... We refrain from concluding that the differing language in the two subsections has the same [reach]”).
In arguing that Section 4(a)(2) protects job applicants, Mr. Villarreal points to the language in the paragraph that, he claims, prevents employers from “depriv[ing] any individual of employment opportunities!.]” (Emphasis added.) The majority, favoring only one portion of the sentence and disregarding the rest of that sentence, believes this argument is reasonable because “any” is a broad and powerful word, and “individual” is not limited to employees. I suppose that clause, if read out of context, could “reasonably” support Mr. Villarreal’s position because an applicant who was not hired is an “individual” who has been “deprived ... of employment opportunities.” But, as this court has said in statutory construction cases, “context means a lot.” Friends of the Everglades v. South Florida Water Mgmt. District, 570 F.3d 1210, 1221 (11th Cir.2009). Here, context simply means that a single clause means what it says. Section 4(a)(2) does not use the word “individual” in isolation, but, instead, it clearly protects only “individuaos]” whose “status as an employee ” was adversely affected by an employer’s “limit[ing], segregating], or classifying] his employees.” (Emphasis added.) Thus, in the context of Section 4(a)(2), the “individuals” authorized to file suit are limited to actual “employees,” rather than people who have no employment relationship with the employer at all.
The majority devotes most of its opinion to several additional extra-statutory arguments that Mr. Villarreal and RJ Reynolds have raised, ultimately concluding that the arguments cut both ways, which renders the statute ambiguous and justifies deference to the EEOC’s longstanding view on this issue. That is all unnecessary. Because the language of Section 4(a)(2) is plain and clear on its face — particularly when contrasted with the language of Section 4(a)(1) — that should end the inquiry. See King v. Burwell, - U.S. -, -, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015). And that means we should not (and cannot) defer to the EEOC’s interpretation of Section 4(a)(2), no matter how long it has held that position. See Public Employees Retirement System of Ohio v. Betts, 492 U.S. 158, 171, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989) (“[O]f course, no deference is due to agency interpretations at odds with the plain language of the statute itself. Even contemporaneous and *1309 longstanding agency interpretations must fall to the extent they conflict with statutory language.”).[3] Deference to an agency’s interpretation of a statute is proper “only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent.” See, e.g., General Dynamics Land Systems v. Cline, 540 U.S. 581, 600, 124 S.Ct. 1236, 1248, 157 L.Ed.2d 1094 (2004). Stated another way, when “regular interpretive method leaves no serious question” about how a statute should be read, looking to an agency’s interpretation is inappropriate. See id. Here, “regular interpretive method” — indeed, just reading both paragraphs of Section 4(a) — “leaves no serious question” that Section 4(a)(2) does not apply to job applicants.
I am not alone in holding this view, as three of our sister circuits have stated that Section 4(a)(2) is limited to employees. Smith v. City of Des Moines, 99 F.3d 1466, 1470 n. 2 (8th Cir.1996) (recognizing that Section 4(a)(2) “governs employer conduct with respect to ‘employees’ only”); Ellis v. United Airlines, Inc., 73 F.3d 999, 1007 n. 12 (10th Cir.1996) (“We do not dwell on [Section 4(a)(2)] because it does not appear to address refusals to hire at all.... ”), overruled on other grounds by Smith, 544 U.S. at 228, 125 S.Ct. at 1536; EEOC v. Francis W. Parker School, 41 F.3d 1073, 1077-78 (7th Cir.1994) (the conclusion that Section 4(a)(2) does not apply to “ ‘applicants for employment’ ... is a result dictated by the statute itself’), overruled on other grounds by Smith, 544 U.S. at 228, 125 S.Ct. at 1536. Villarreal concedes these “contrary circuit decisions,” but he asserts that they were addressing Section 4(a)(2) “only in dicta.” That may be true. Nevertheless, these opinions indicate that three Courts of Appeal read Section 4(a)(2) to exclude job applicants, which is “a result dictated by the statute itself.” See Francis W. Parker School, 41 F.3d at 1078. And, that’s not all.
In her concurring opinion in Smith, Justice O’Connor (who was joined by Justice Kennedy and Justice Thomas) could not have been any clearer on this issue: “Section 4(a)(2), of course, does not apply to ‘applicants for employment’ at all — it is only § 4(a)(1) that protects this group.” See Smith, 544 U.S. at 266, 125 S.Ct. at 1559 (O’Connor, J., concurring) (emphasis added).[4] While Justice O’Connor was only writing for three Justices, it is notable that nobody disagreed with her.[5] In fact, rath *1310 er than dispute her confident declaration that “of course” Section 4(a)(2) does not protect job applicants, Justice Scalia wrote that the EEOC’s “attempt to sweep employment applications into the disparate-impact prohibition [may be] mistaken,” id. at 246 n. 3, 125 S.Ct. at 1548 n. 3 (Scalia, J., concurring), while the four-justice plurality stated (and Justice Scalia “agree[d]”) that Section 4(a)(2) “focuses on the effects ... on the employee,” and courts must recognize “key” differences between Section 4(a)(1) and (a)(2):
Paragraph (a)(1) makes it unlawful for an employer “to fail or refuse to hire ... any individual ... because of such individual’s age.” (Emphasis added.) The focus of the paragraph is on the employer’s actions with respect to the targeted individual. Paragraph (a)(2), however, makes it unlawful for an employer “to limit ... his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual’s age.” (Emphasis added.) Unlike in paragraph (a)(1), there is thus an incongruity between the employer’s actions — which are focused on his employees generally — and the individual employee who adversely suffers because of those actions. Thus, an employer who classifies his employees without respect to age may still be liable under the terms of this paragraph [Section 4(a)(2) ] if such classification adversely affects the employee because of that employee’s age — the very definition of disparate impact.
Id. at 236 & n. 6, 125 S.Ct. at 1542 & n. 6 (some emphasis altered). In other words, the four-Justice plurality, Justice Scalia, and Justice O’Connor (along with Justices Kennedy and Thomas, who concurred with her) treated Section 4(a)(2) as limited to employees — which is exactly what the statute says — and Justice Scalia separately recognized that it might be a “mistake[ ]” to conclude otherwise.
The majority does not persuasively dispute this reading of Smith. Rather, because Smith involved current employees, it dismisses the language as dicta, just as Mr. Villarreal has sought to avoid inconvenient language directly on point from the Seventh, Eighth, and Tenth Circuits. But together, that’s a lot of dictum to ignore. Furthermore, “there is dicta and then there is dicta, and then there is Supreme Court dicta.” Schwab v. Crosby, 451 F.3d 1308, 1325 (11th Cir.2006). This circuit has warned that “dicta from the Supreme Court is not something to be lightly cast aside,” especially if it is “ ‘expressed so unequivocally’ ” and there is no “ ‘clear’ ” case law to the contrary. See id. at 1325-26 (citing multiple cases). Not only is there no clear case law to the contrary — by any court, anywhere — but at least two District Courts have read Smith’s “dicta” to be unequivocal and preclude disparate impact claims by job applicants. See Mays v. BNSF Railway Co., 974 F.Supp.2d 1166, 1175-77 (N.D.Ill.2013) (observing that because “both the plurality and Justice O’Connor’s concurrence described [Section 4(a)(2) ] as protecting the employer’s employees, period ... the best and likely only possible way to read the provision’-’ is that it must be limited to “an ‘employee’ of the employer”); see also EEOC v. Allstate Ins. Co., 458 F.Supp.2d 980, 989 (E.D.Mo.2006) (“a disparate impact hiring case ... is no longer cognizable after [Smith]”), aff'd 528 F.3d 1042 (8th Cir.2008), reh’g en banc granted and *1311 opinion vacated and appeal dismissed for lack of jurisdiction (Sept. 8, 2008).[6]
In sum, the statute is plain and unambiguous. Consistent with two District Courts, three Courts of Appeal, and eight Supreme Court Justices (the full Court that considered the Smith case): “Section 4(a)(2), of course, does not apply to ‘applicants for employment’ at all — it is only § 4(a)(1) that protects this group.” Smith, 544 U.S. at 266, 125 S.Ct. at 1559 (O’Con-nor, J., concurring). The majority is wrong to hold otherwise.[7]
II.
Now to the second issue raised on appeal: equitable tolling. I will start by discussing the high standard that a plaintiff must satisfy before tolling is allowed.
The general federal rule is that a statute of limitations begins to run when the facts that would support a cause of action are apparent “ ‘or should be apparent to a person with a reasonably prudent regard for his rights.’ “ Rozar v. Mullis, 85 F.3d 556, 561-62 (11th Cir.1996) (citations omitted). For employment discrimination claims, “a cause of action accrues whenever an individual is directly and adversely affected by the discriminatory practices of the defendant.” United States v. Georgia Power Co., 474 F.2d 906, 924 (5th Cir.1973).[8] Triggering “events” include “the refusal to hire the discriminatee[.]” Id.; accord, e.g., Hulsey v. Kmart, 43 F.3d 555, 558-59 (10th Cir.1994) (“[Njotice or knowledge of discriminatory motivation is not a prerequisite for a cause of action to accrue under the ADEA. On the contrary, it is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations.”). Consequently, the statute of limitations began running for Mr. Villarreal’s claim when he was not hired in November 2007. That means his EEOC charge in May 2010 was untimely— unless he is entitled to equitable tolling.
A limitations period can be equitably tolled if the party seeking it establishes that he was prevented from filing sooner because of events “that are both beyond his control and unavoidable even with diligence,” as numerous panels of this court have expressed it. See Motta ex rel. A.M. *1312 v. United States, 717 F.3d 840, 846 (11th Cir.2013); Brotherhood of Locomotive Eng’rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc., 522 F.3d 1190, 1197 (11th Cir.2008); Arce v. Garcia, 434 F.3d 1254, 1261 (11th Cir.2006); accord Drew v. Department of Corrections, 297 F.3d 1278, 1286 & 1290 n. 5 (11th Cir.2002) (noting same while tracing the origins of equitable tolling from its roots in English courts of chancery, and describing the “longstanding, firmly rooted principle that a court cannot grant equitable tolling unless it is satisfied that the party seeking such relief has acted with diligence”). In employment cases, courts have said that the diligence requirement “imposes an affirmative duty on the potential plaintiff to proceed with a reasonable investigation in response to an adverse event.” See Pacheco v. Rice, 966 F.2d 904, 907 (5th Cir.1992); cf. Hulsey v. Kmart, 43 F.3d at 558 (refusing to toll statute of limitations period because plaintiff had a “duty to determine whether there was, in fact, a discriminatory motivation” for the adverse job action). Notably, “[i]t bears emphasizing ... that due diligence on the part of the plaintiff, though necessary, is not sufficient to prevail on the issue of equitable tolling. The Supreme Court has made clear that tolling is an extraordinary remedy which should be extended only sparingly.” Justice v. United States, 6 F.3d 1474, 1479 (11th Cir.1993) (citing Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990)). This court has stated the same in the ADEA context: “Equitable tolling is inappropriate when a plaintiff did not file an action promptly or failed to act with due diligence. Equitable tolling- ‘is an extraordinary remedy which should be extended only sparingly.’ ” See Bost v. Federal Express Corp., 372 F.3d 1233, 1242 (11th Cir.2004) (citation omitted). A party seeking it must demonstrate “extraordinary circumstances.” See Jackson v. Astrue, 506 F.3d 1349, 1353-55 (11th Cir.2007) (citing, inter alia, Ross v. Buckeye Cellulose Corp., 980 F.2d 648 (11th Cir.1993) (Title VII case)).
The majority says that extraordinary circumstances are not required in ADEA cases.[9] According to the majority, a less stringent standard applies in employment discrimination cases since discriminatory hiring practices are “unlikely to be readily apparent to the individual discriminated against.” Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 931 (5th Cir.1975). In advancing this argument, the majority notes that Jackson, supra, is a Social Security Act case, and it is “unaware of any ADEA case that imposes [the ‘extraordinary circumstances’] requirement.” Jackson is indeed a Social Security Act case. But, as indicated above, it expressly relies on Ross, which is a Title VII case that required a showing of “extraordinary circumstances.” See Jackson, 506 F.3d at 1353-55 (concluding that “a finding of extraordinary circumstances is necessary before a court may equitably toll the SSA’s statutory period,” which, the panel went on to observe, “is fully consistent with [this circuit’s] approach to equitable tolling in” employment discrimination cases such as Ross). Consequently, to be entitled to equitable tolling — even in the employment discrimination context — it appears to be well established that this court does, in fact, require plaintiffs to show “extraordinary circumstances.”[10]
*1313 If evaluated under the proper standard, it is clear that equitable tolling is not justified in this case. As previously noted, equitable tolling is only appropriate if a plaintiff untimely files due to extraordinary circumstances that are both beyond his control and unavoidable with due diligence. Mr. Villarreal does not even claim that there are any extraordinary circumstances in this case (like fraud, misinformation, or deliberate concealment by RJ Reynolds) that should warrant this extraordinary and sparingly-used remedy.[11]
Mr. Villarreal was given an opportunity by the District Court to set out his equitable grounds for tolling. According to his proposed amended complaint, after he was denied employment with RJ Reynolds in November 2007, he did nothing for more than two years. In fact, he did not even call the company to confirm that his application had been reviewed, let alone find out why it was rejected. He made no attempt to discover the identity or age of the person who was hired, nor did he try to learn about the company’s hiring practices or its allegedly discriminatory “resume review guidelines.” To be sure, it might have been somewhat difficult for him to have gotten such information since RJ Reynolds used third-party services to screen its applicants, but the fact is that he made no attempt to try. He did not exercise any diligence at all, and a reasonably prudent person with concern for his rights would have done so.
The majority believes that such efforts should not be required of plaintiffs in failure-to-hire cases because any investigation into why they were not hired would be “an entirely futile” gesture insofar as “[a] disappointed applicant inquiring of an employer about the age and identity of whoever was hired in his stead will likely not be well received. Indeed, employers have every incentive to hold this type of information close.” But, the same could be said of almost every case. Potential defendants in virtually every litigation have an incentive to withhold information that might subject them to liability. Yet, we always require plaintiffs to exercise diligence before they are entitled to equitable tolling; and as previously noted, the remedy is so rare that it could still be denied *1314 even if the plaintiff did exercise due diligence. Justice, 6 F.3d at 1479.
Whatever specific form “due diligence” could have taken on the facts of this case (whether personal investigation or something else), if the diligence requirement means anything at all, Mr. Villarreal must have at least done something. See id.; Pacheco, 966 F.2d at 907; cf. Drew, 297 F.3d at 1290 n. 5 (recognizing that equitable tolling is a remedy “that has always been reserved only for parties who have pursued their rights diligently and whose untimeliness is due to factors entirely beyond their control;” consequently, a party seeking relief cannot have “ ‘slept on his rights’ ” and done “ ‘nothing for several years’”) (emphasis in original) (collecting cases). The record here is unchallenged that Mr. Villarreal did nothing until about two and a half years after his application was rejected, when he was first contacted by the attorneys investigating a possible class action suit against RJ Reynolds. As far as I can tell, neither this circuit nor any other court has ever tolled a statute of limitations in order to accommodate lawyers putting together a cause of action, and allowing tolling in such a situation effectively eviscerates the statute of limitations. Villarreal has not shown (or even alleged) that there was anything “extraordinary” which prevented him from investigating his claim (with or without an attorney) and then pursuing his rights within the limitations period. To follow the necessary logic of his argument, any plaintiff (in any type of lawsuit) who claims to have required the assistance of an attorney to discover the existence of a claim-even those plaintiffs, like Villarreal, who conduct absolutely no diligence at all — may be entitled to equitable tolling for an indefinite period of time.[12]
It is telling that every case the majority has relied upon (save one) involved misrepresentations and/or concealment by employer defendants.[13] Although I have agreed that equitable tolling does not necessarily require active misrepresentation or concealment by the employer [supra note 11], each of the cases cited by the majority precisely involved misrepresentation or concealment. See, e.g., Jones v. Dillard’s, Inc., 331 F.3d 1259 (11th Cir.2003) (employer fired plaintiff after claiming that her position was being eliminated, but she discovered more than 180 days later that the job had been filled with a younger person); Sturniolo v. Sheaffer, Eaton, Inc., 15 F.3d 1023 (11th Cir.1994) *1315 (same); Cocke v. Merrill Lynch & Co., Inc., 817 F.2d 1559 (11th Cir.1987) (employer told plaintiff that he was going to be terminated on a date certain, but that the company would continue to look for a position for him in the meantime; holding that tolling was appropriate as “[i]t is too much for the law to expect an employee to sue his employer for age discrimination at the same time he is led to believe the employer is trying to place him in another job”). Importantly, all of these cases are rooted in Reeb, supra, where a female employee was falsely told that her job was not being renewed due to limited funds, after which she discovered (once the time to file with the EEOC had passed) that her position had actually been filled by a less qualified male. The defendant company, in other words, “actively sought to mislead” her. Reeb, 516 F.2d at 930.
The common denominator in every one of these cases is that the employers misrepresented or concealed information, and the plaintiffs were put in a situation where they confronted “two equally unattractive options”: file a claim when there was at most “a mere suspicion,” in which case the litigation would be considered premature and would probably fail; or wait for “the surfacing of telltale evidence,” i.e., the hiring of a younger individual, in which case “the cunning employer will escape liability by postponing the hiring of a replacement for at least six months.” See Jones, 331 F.3d at 1264. As this court has noted, the point of Reeb was simply to “close the loophole” that was being used by such “malicious employers” to avoid liability. Jones, 331 F.3d at 1264-65. Or, as the former Fifth Circuit described it: “The rationale underlying [Reeb] is that it is unfair to allow a defendant to conceal facts that support the plaintiffs cause of action and then to rely on the statute of limitations to bar the suit when a duly diligent plaintiff was unable to discover those facts.” Chappell v. Emco Mach. Works,
601 F.2d 1295, 1303 (5th Cir.1979). The majority’s reliance on Reeb and its progeny is misplaced on the facts presented here.
It makes sense to apply equitable tolling in the sort of cases described above since it would be inequitable to allow an employer to take advantage of a statute of limitations by misrepresenting or fraudulently concealing information that could have put the employee on notice that his rights might have been violated. As the Reeb court stated, “a party responsible for such wrongful concealment [should be] estopped from asserting the statute of limitations as a defense ... [as] ‘no man may take advantage of his own wrong.’ ” See Reeb, 516 F.2d at 930 (citation omitted). However, it makes absolutely no sense to apply tolling in a situation like the one here, where there was no misconduct by RJ Reynolds that in any way contributed to Mr. Villarreal’s late filing. Unlike every one of the cases cited by the majority, the company did not conceal facts, erect any barriers, or take advantage of a “loophole” to keep him from filing timely. Nor was he misled about the applicable statute of limitations. See supra note 13. Mr. Villarreal just did nothing — not even make a phone call to see that his resume had been reviewed— for approximately two and a half years. To the extent the majority believes that equitable tolling is available in cases like this one simply because people who are discriminated against in hiring do not have sufficient information to know they were victims of discrimination, that is hardly an unusual or extraordinary circumstance. As RJ Reynolds has pointed out:
Accepting Villarreal’s argument would mean that the limitations period in most every hiring case could be tolled indefinitely, or at least until the plaintiff was contacted by an attorney looking for clients to build a class action. Equitable tolling would no longer be an “extraordi *1316 nary remedy” — it would become the norm. That is not and should not be the law.
There are obvious reasons why today’s ruling “should not be the law,” including some identified by the Seventh Circuit:
Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose. The statute of limitations is short in age discrimination cases as in most employment cases because delay in the bringing of suit runs up the employer’s potential liability; every day is one more day of backpay entitlements. We should not trivialize the statute of limitations by promiscuous application of tolling doctrines.
Cada v. Baxter Healthcare Corp., 920 F.2d 446, 452-53 (7th Cir.1990) (Posner, J.).
I recognize that the majority is not necessarily saying that Mr. Villarreal will be entitled to equitable tolling. Rather, it is saying that, at the motion to dismiss stage, he has adequately pled the applicability of the doctrine. He has not. Under Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), Mr. Villarreal must allege sufficient facts, taken as true, that state a “plausible” claim for equitable tolling. Although he makes a boilerplate allegation in his amended complaint that a reasonably prudent person in his position would not have suspected the company’s discriminatory hiring practices until he was contacted by the lawyers, that is not enough. See, e.g., Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (“A pleading that offers ‘labels and conclusions’ or ‘a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders ‘naked assertion[s]’ devoid of ‘further factual enhancement.’ ”) (quoting Twombly). Villarreal alleges no facts suggesting that there was anything “extraordinary” here. There is nothing about this case that is particularly unique or different than any other failure-to-hire case. The District Court gave Villarreal an opportunity to meet the Twombly and Iqbal standard, but he was not able to do so. In fact, rather than setting forth a plausible claim for equitable tolling, the amended complaint conclusively establishes that tolling is not appropriate. It bears repeating once more that the amended complaint makes clear that Villarreal not only failed to conduct any inquiry into why he was not hired, but it expressly states that he did not even contact RJ Reynolds to see “whether his application had been reviewed at all.” It is, quite frankly, hard to imagine a plaintiff acting with less diligence and prudent regard for his rights.[14]
III.
For the reasons stated above, I believe the District Court should be affirmed. I must respectfully dissent.

. Chief Justice Rehnquist took no part in the Smith decision.

. The ADEA defines employee as “an individual employed by any employer[.]” See 29 U.S.C. § 630(f).

.The EEOC has been wrong many times before. Betts is one of several cases that RJ Reynolds has cited where courts have rejected the agency’s flawed reading of the ADEA. See, e.g., Kentucky Retirement Systems v. EEOC, 554 U.S. 135, 149-50, 128 S.Ct. 2361, 2371, 171 L.Ed.2d 322 (2008) (refusing to defer to EEOC's unpersuasive interpretation of the ADEA); General Dynamics Land Systems v. Cline, 540 U.S. 581, 600, 124 S.Ct. 1236, 1248, 157 L.Ed.2d 1094 (2004) (deference to EEOC's reading of the ADEA unwarranted "because the Commission is clearly wrong”); Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1316 (10th Cir.2005) (rejecting EEOC's position because it was "not particularly persuasive” and "directly contrary” to numerous other authorities).

. The only source that Justice O’Connor cited for this pronouncement was Section 4(a) itself, strengthening the conclusion that it is compelled by a plain reading of the statute.

. If, for example, Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) must be read the way that Mr. Villarreal reads it (which the majority says is reasonable), it seems likely that someone would have at least mentioned it in response to Justice O’Connor's statement. After all, the Justices repeatedly voiced their disagreements with multiple other parts of her opinion. See Smith, 544 U.S. at 236 ns. 6-7, 238-239, 125 S.Ct. at 1542 ns. 6-7, 1543-44 (e.g., Justice O’Connor “ignores” parts of the statute; "her textual reasoning is not persuasive;” and she is "quite wrong”) (plurality); accord id. at *1310 245-47 & ns. 2-3, 125 S.Ct. at 1547-49 & ns. 2-3 (e.g., Justice O’Connor's various arguments are ''misguided,” unsupported by authority, "cannot be squared,” "make[] little sense,” and "cannot possibly be [right]”) (Scalia, J., concurring).

. Moreover, to the extent that all the cases I have cited on this issue may involve dicta, that only helps prove the point. If the issue was not expressly raised and argued in these cases (or in any other case), perhaps that is because, until this case, no plaintiff had ever tried to argue that Section 4(a)(2) applies to job applicants. And, until today, no court had ever suggested the statute could be read that way.

. The majority ignores the two District Courts and dismisses the three Courts of Appeal. It also discounts the significance of the plurality opinion and Justice Scalia’s concurrence in Smith. Although the opinions of the eight Supreme Court Justices with respect to Section 4(a)(2) and job applicants versus employees may be dicta, it is equally possible that it was integral to the Court’s analysis. At the very least, three Justices (O’Connor, Kennedy, and Thomas) unequivocally and emphatically stated that Section 4(a)(2) does not apply to job applicants, and the other five Justices impliedly agreed. This "dicta" might not be compelling if there was persuasive case law to the contrary, but no court has ever suggested otherwise in the almost fifty years since the ADEA was enacted. While the majority points out that this undisputed and directly-on-point dicta is not part of "three long, citation-laden paragraphs” of "well thought out, thoroughly reasoned, and carefully articulated analysis,” that is not surprising. Indeed, because the three Justices (and arguably the whole Court) believed Section 4(a)(2) to be so clear and unambiguous that "of course” it does not apply to job applicants, a lengthy and detailed analysis was unnecessary.

. In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), this circuit adopted as binding precedent all Fifth Circuit decisions that were rendered before October 1, 1981.

. Even if one assumes that "extraordinary circumstances" are not required in ADEA cases (and, as will be seen in a moment, that is simply not correct), the precedent I just cited in the text makes it clear that equitable tolling' — even in ADEA cases — is at the very least " ‘an extraordinary remedy which should be extended only sparingly.'" See Bost, 372 F.3d at 1242 (ADEA case).

. In addition to the published authority cited above, this circuit has repeatedly required *1313 "extraordinary circumstances" in Title VII and ADEA cases in unpublished decisions. See, e.g., Mesidor v. Waste Mgmt., Inc. of Florida, 606 Fed.Appx. 934, 936 (11th Cir.2015) (stating in Title VII case: "To show they are entitled to equitable tolling, the Appellants must show extraordinary circumstances such as fraud, misinformation, or deliberate concealment.”); Bourne v. School Bd. of Broward County, 508 Fed.Appx. 907, 909-10 (11th Cir.2013) (same in Title VII case); Brown v. John Deere Product, Inc., 460 Fed.Appx. 908, 909-10 (11th Cir.2012) (same in Title VII case); Arrington v. United Parcel Service, 384 Fed.Appx. 851, 852 (11th Cir.2010) (same in ADEA case); Wakefield v. Cordis Corp., 211 Fed.Appx. 834, 836 (11th Cir.2006) (same in Title VII case). This acknowledgment of the "extraordinary circumstances” -requirement in so many unpublished cases is an implicit agreement that it is the settled law of this circuit.

. To be clear, I have cited employer fraud, misinformation, and deliberate concealment for illustrative purposes; I am not suggesting they are required. In fact, I agree with the majority that they are not. However, as will be seen shortly, this circuit has long been reluctant to — and usually does not — allow equitable tolling in the absence of such evidence. See, e.g., Cabello v. Fernandez-Larios, 402 F.3d 1148, 1154-55 (11th Cir.2005) (observing that equitable tolling " 'is reserved for extraordinary facts,’ " and, before it can be authorized, " 'courts usually require some affirmative misconduct, such as deliberate concealment' ”) (citation omitted); see also Cocke v. Merrill Lynch & Co., Inc., 817 F.2d 1559, 1561 (11th Cir.1987) (recognizing that " ‘courts evince a reluctance to toll the filing period absent misconduct or bad faith attributable to the defendant’ ”) (citation omitted).

. The majority tries to cabin its ruling to employment discrimination claims (particularly failure-to-hire claims). It maintains that the law it announces today makes "good sense” because job applicants "may not know any relevant facts at the time of the discriminatory act.” However, even if that is true "at the time,” that does not excuse them from acting with diligence (as required by circuit precedent) and making an effort to learn the “relevant facts” thereafter. To the extent the majority believes, as previously noted, that it would be "futile” for a plaintiff to conduct such an inquiry because a defendant would have "every incentive” to withhold evidence relating to his misdeeds, the logic of that view would not only apply to discrimination statutes, but could apply to virtually any civil action.

. And, the one case that did not involve any misconduct by the employer, Browning v. AT & T Paradyne, 120 F.3d 222 (11th Cir.1997), does not help Mr. Villarreal. While that case did not have employer misconduct, it did involve the EEOC advising the plaintiff that his claim was governed by an incorrect statute of limitations, after which he filed a claim that' was untimely by 18 days. This circuit concluded: "On this unique, specific set of facts, we hold, and our holding is a very narrow one, that the statute of limitations was tolled for the 18 days that Hanna's complaint was untimely.” Id. at 227 (emphasis added). By contrast, there are no allegations of misconduct or misinformation in this case (by either the company or the EEOC) that prevented Mr. Villarreal from filing timely.

. Because the majority accepted Mr. Villarreal’s equitable tolling argument, it found it unnecessary to reach his alternative argument pursuant to the continuing violation doctrine.” I will not do so either.